**Will L. CLEGG et al.,
Plaintiffs-Appellees,**

v.

**Leo H. CONK, Defendant-Appellant.**

**No. 74-1059.**

United States Court of Appeals,
Tenth Circuit.

Argued Sept. 11, 1974.

Decided Dec. 5, 1974.

Byron L. Stubbs, Salt Lake City, Utah, for defendant-appellant.

Lowell N. Hawkes, Salt Lake City, Utah (Harold G. Christensen of Worsley, Snow & Christensen, Salt Lake City, Utah, with him on the brief), for plaintiffs-appellees.

Before LEWIS, Chief Judge, HOLLO-WAY, Circuit Judge, and CHRISTEN-SEN, Senior District Judge.*

CHRISTENSEN, Senior District Judge.

This appeal from judgment on the verdict in a securities case raises questions concerning the applicable statute of limitations and the elements of scienter and reliance in so-called 10b–5 actions.

Plaintiffs' complaint was "based upon violation of laws of the United States and the State of Utah including the proscriptions of Section 17(a) of the Securities Act of 1933 (15 U.S.C. Sec. 77q), Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. Sec. 78j), Rule 10b–5 promulgated pursuant thereto by the United States Securities and Exchange Commission (17 C.F.R. Sec. 240 10b–5) . . . and the Utah Uniform Securities Act (Utah Code Ann. § 61–1–1 et seq. (1953))."

There is little point in reciting the other allegations set out in plaintiffs' pleadings since they were generally denied by the appellant Conk and the partial transcript of the evidence before us is insufficient to determine with precision any particular allegations that were supported by substantial evidence on the whole record. But from the partial transcript of the testimony of one of the plaintiffs, the exhibits before us, and record statements of counsel during the trial indicating agreement as to certain circumstances, at least these structural facts emerge in view of inferences that may be drawn favorably to the verdict:[1]

Defendant-appellant Conk in August, 1968, was granted a distributorship for car wash units by Hanna Enterprises, a nonincorporated out-of-state business.[2]

---

* Of the District of Utah, sitting by designation.

1. To formulate a statement of background facts against which abstract instructions can be tested and weighed for any fundamental effect upon the verdict is not an easy matter. The pre-trial order under the heading "Uncontroverted Facts" merely recites that "[t]here are no uncontroverted facts in addition to those established by the pleadings and discovery." But the defendant-appellant in the pleadings generally denied the allegations of the First Amended Complaint on which the parties went to trial, and there is nothing to show that the products of discovery and particularly the responses to interrogatories included in the file were offered or received in evidence.

2. Hanna Enterprises, together with Hanna Marketing Company and Daniel C. Hanna, in addition to the original defendant Conk, were

In the late fall of that year Conk contacted John E. Olson, one of the plaintiff-appellees, and later there was a meeting, or meetings among appellant and appellees as part of a larger group of prospective investors, when an investment proposal was explained by Conk and his associate, Stewart, now deceased. Conk made untrue statements or omitted to state facts necessary to render what he said not misleading, and these statements and omissions were material to the investment judgment of the appellees who relied upon them in making investments in the car washing business being thereby promoted by appellant, to their several damages in the amounts found by the jury.[3]

Appellant Conk's answer did not plead the statute of limitations nor any other affirmative defense. It was agreed, however, at the final pre-trial conference, that limitations would be one of the issues to be tried. For some reason the pre-trial order included in the record does not so provide, but the transcript of discussions before the trial judge assumes such an agreement and understanding, as do we. The pre-trial order as filed recites that "[t]here are no contested issues of law" and that "[t]here are no uncontroverted facts in addition to those established by the pleadings and discovery."

Far from this being so as to the law, however, substantial trial time was consumed by arguments between the parties, which have to a degree been pro-

jected here, whether the issue of the statute of limitations had been waived, whether a motion to dismiss on the ground that the claims were barred was timely, whether the statute in the absence of pleading could be considered at all, whether the defendant had been guilty of sharp practice by delaying the pressing of that defense until the opening of the trial, whether on the assumption that a two-year state statute was applicable plaintiffs could successfully claim that they did not discover the alleged fraud until within two years of the commencement of their action in view of allegations in their complaints that they had discovered the fraud one month earlier, and whether the discovery of some elements of fraud that early was effective to start the running of the statute if the greater part of its circumstances and seriousness was not discovered until afterwards.

■ These problems may be shortly disposed of for the purposes of this case by our rejecting, as did the trial court ultimately, appellant's basic contention that since plaintiffs had claimed under both the 1933 and the 1934 Acts, and also had asserted a claim in reliance upon the Utah Blue Sky Law,[4] one of the shorter limitation periods should apply, rather than the three-year period provided by state statutes for fraud cases which this court has repeatedly held applicable to implied rights of action under the Securities Exchange Act of 1934.[5]

---

named as parties defendant by the First Amended Complaint. The Executor of the Estate of Darryl M. Stewart, also an original defendant, was dropped as such by the Amended Complaint. The added defendants by consent of the parties were in the instructions of the trial court treated essentially as one entity under the name "Hanna", received a "no cause of action" verdict in their favor and for this reason do not appear as appellees in this case, although so designated in "appellants'" brief.

3. The amount of damages—$5,000 for each plaintiff—was stipulated subject to a determination of liability.

4. The state Blue Sky Law claim was dismissed by the trial court. The case was sub-

mitted to the jury on the basis of the Section 10(b) Securities Exchange Act of 1934 and Rule 10b–5.

5. Richardson v. MacArthur, 451 F.2d 35 (10th Cir. 1971); Mitchell v. Texas Gulf Sulphur Company, 446 F.2d 90 (10th Cir.), cert. denied in 404 U.S. 1004, 92 S.Ct. 564, 30 L.Ed.2d 558 (1971), in 405 U.S. 918, 92 S.Ct. 943, 30 L.Ed.2d 788 (1972); Esplin v. Hirschi, 402 F.2d 94 (10th Cir. 1968), cert. denied, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969), and Chiodo v. General Waterworks Corporation, 380 F.2d 860 (10th Cir.), cert. denied, 389 U.S. 1004, 88 S.Ct. 562, 19 L.Ed.2d 599 (1967). See also deHaas v. Empire Petroleum Company, 435 F.2d 1223 (10th Cir. 1970).

▇ The only serious problem in this case arises from appellant's contention that the trial court erroneously eliminated from plaintiffs' 10b–5 action any requirements for scienter and reliance, and submitted the case to the jury on the basis of a restrictive view of the elements referred to in Stevens v. Vowell, 343 F.2d 374 (10th Cir. 1965).[6]

The question of whether some species of scienter should have been recognized in the instructions as an element of appellant's 10b–5 action was squarely presented to the trial court in pre-submission conferences.[7] The trial court indicated that it might give a modified negligence instruction in this area, and indeed did so as to the other defendant Hanna which was claimed to have been involved through publications furnished to the appellant Conk. But as to the latter, apparently its reading of Stevens v. Vowell, 343 F.2d 374 (10th Cir. 1965), *supra*, led it to apply rather literally the language that in a 10b–5 action "[i]t is only necessary to prove one of the prohibited actions such as the material misstatement of fact or the omission to state a material fact", with the result that the subject of scienter was ignored [8]

6. "It is not necessary to allege or prove common law fraud to make out a case under the statute and rule. It is only necessary to prove one of the prohibited actions such as the material misstatement of fact or the omission to state a material fact." 343 F.2d at 379.

7. Before instructions were formulated, and in connection with the statute of limitations problem the trial judge stated: "I think I find that in the *Mitchell* case and in the *Chiodo* case the 3-year statute applies and has been applied in this circuit. And it seems to the Court that the Court's view in this should be that the 3-year statute should apply in view of that ruling by the Court. It does present the problem of scienter. But I was thinking that we don't have to really decide that question right now (Tr. 36).

"Now, I confess that Mr. Stubbs has stimulated me on this question of the seeming illogic that is presented by adopting the 3-year rule . . . [a]nd this would seem to justify in the minds of some courts the requirement of scienter. And I presently have the feeling that the other cases we have from the circuit setting out elements in the securities case, such as in the Vowell case, and other cases in which this court has given instructions on securities cases, we have not given scienter.

"So I have doubts presently that I would put scienter in. But I'm still open to persuasion on that." Later the following occurred (Tr. 99):

"Mr. Christensen (for plaintiffs): But the case which was relied upon, the *Trussell* case, by the defendant Conk this morning, your Honor, has been discussed in Bromberg on Securities, page 50, and the author points out—and it's speaking now not of limitations, but of the requirement for scienter, which is a key point in the argument which is made by Mr. Stubbs the author in that work, your Honor, points out that:

" 'Among the cases requiring scienter is Trussell v. United Underwriters.'

"And it states as to the contrary the case of Stevens v. Vowells at 343 F.2d 374 from the Tenth Circuit (1965), which, of course, is a later case than the *Trussell* case and a case which is controlling on the District Court for the District of Colorado. . . .

"The Court: I'll think about it overnight . . .

"I would say that I have looked at the case of Judge Doyle, and you have to read further into the decision to determine how he construes scienter. It isn't all that easy just to accept that, because he does qualify it from the standpoint of the meaning of specific intent and so on. It isn't all that clear.

"So these subsequent decisions, I think have a bearing. And we have looked at Bromberg; and Bromberg cites the *Texas Gulf* case, too, as an indication that scienter in the usual sense is not perhaps required.

"In a section in Bromberg it lists all of the circuits on this point. They list the Tenth Circuit in the category that Mr. Christensen has argued for."

8. "14. In order for you to find for any of the plaintiffs and against the defendant Conk upon the federal claim, you must find by a preponderance of the evidence each of the following enumerated elements:

"1. That in connection with or in furtherance of the transaction involving DeKater Corporation, there was use of some means or instrumentality of interstate commerce. . . [The remainder of this statement is not pertinent to any point on this appeal since such use was not contested.]

"2. That the transaction involved the sale or purchase of a security. . . . [The trial court properly instructed the jury that a security was involved.]

"3. That in connection with the transaction, or in order to effect or perpetuate it, the defendant Conk did any one or more of the following:

except as it might be gathered from the language of Rule 10b–5 itself. It is to be noted, however, that the element of "reliance" was covered beyond the otherwise restrictive interpretation of the language of *Stevens* and in harmony with Affiliated Ute Citizens v. United States, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972).

Other courts have interpreted the language of *Stevens* as meaning that there is no requirement of scienter in this circuit more burdensome than a showing of negligence.[9] This court has rejected

such an interpretation expressly,[10] which rejection undoubtedly survives any contrary inference that might be drawn from dicta in our latest opinion.[11]

■ The emphasis in Stevens v. Vowell of the necessity of a flexible interpretation of the security laws to cover all conduct, schemes and contrivances within its scope independently of the rigid requirements of common law fraud has been often quoted. We reaffirm that essential principle as it constitutes the hallmark, genius and strength of modern securities legislation. Yet the

---

"a. Engaged in any device, scheme, or artifice to defraud any or all of the plaintiffs, or

"b. Made any untrue statement of material fact, or

"c. Omitted to state any material fact necessary in order to make any statement made, in the light of the circumstances in which they were made, not misleading.

"4. That with regard to the misstatement of a material fact, such misstatement was a substantial factor in the investment decision.

"But with regard to the omission of a material fact, as distinguished from a misstatement, it is not necessary to plaintiffs' recovery for you to find that such omission was a substantial factor in plaintiffs' investment decision."

In general instructions the jury was told that "[a]n undisclosed material fact is a fact which would have influenced a reasonable man to act differently had he not been informed of the fact", that " 'material' or 'material fact' as I have used these terms means of significance to a person in exercising his investment judgment", and that "[t]he fact of reliance by a plaintiff upon particular statements or omissions, if you find such to be the fact, is persuasive evidence that the particular statement or omission relied upon is material."

**9.** E. g., Rochez Bros., Inc. v. Rhoades, 491 F.2d 402 (3d Cir. 1974); Lanza v. Drexel & Co., 479 F.2d 1277 (2d Cir. 1973), dissenting opinion of Judge Hayes, at p. 1306; Vanderboom v. Sexton, 422 F.2d 1233 (8th Cir.), cert. denied, 400 U.S. 852, 91 S.Ct. 47, 27 L.Ed.2d 90 (1970); Securities and Exchange Com'n v. Texas Gulf Sulphur Co., 401 F.2d 833 (2d Cir. 1968), cert. denied in 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969), in 404 U.S. 1005, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1971).

In Lanza v. Drexel & Co., 479 F.2d 1277 (2d Cir. 1973), *supra*, the court en banc rejected the idea advanced in some of its prior opinions that mere negligence could dispense with the necessity for some species of scien-

ter in 10b–5 cases. The court stated among other things:

"Yet the rule-making power granted to the Securities and Exchange Commission by Section 10(b) authorizes rules making it unlawful '[t]o use or employ . . . any *manipulative* or *deceptive* device or contrivance . . . .' (emphasis added.) These words negate liability for a mere negligent omission or misrepresentation. Rather, 'proof of fraud is required in suits under § 10(b) of the 1934 Act and Rule X–10 B–5 . . . . .' "

Citing Fischman v. Raytheon Mfg. Co., 188 F.2d 783, 786 (2d Cir. 1951). The court concluded that at least ". . . proof of a wilful or reckless disregard for the truth is necessary to establish liability under Rule 10b–5." 479 F.2d at 1306. The dissenting opinion of Judge Hays, 479 F.2d at 1319, again exemplifies the prevalent misunderstanding of Stevens v. Vowells by listing that case with Ellis v. Carter, 291 F.2d 270 and City National Bank v. Vanderboom, 422 F.2d 221 as proof that at least in the Tenth, Ninth and Eighth Circuits it has been ruled ". . . that scienter is not a necessary element of a 10b–5 claim for relief."

A hint of the confusing nature of this subject generally is indicated by headnote 1 of the West advance sheets reporting United States v. Jones, 380 F.Supp. 343 (D.N.J.1974), "The government need not show fraudulent intent to obtain a criminal conviction under the Securities Act", vis-a-vis the related text reading: "Initially no one seriously argues that the government need not show fraudulent intent to obtain a criminal conviction under the Securities Act . . . especially when it is yet seriously debated that such fraudulent intent is a prerequisite in proving even civil liability under the Act."

**10.** Mitchell v. Texas Gulf Sulphur Co., 446 F.2d 90 (10th Cir. 1971), *supra*; Gilbert v. Nixon, 429 F.2d 348 (10th Cir. 1970).

**11.** Kerbs v. Fall River Industries, Inc., 502 F.2d 731 (10th Cir. 1974), footnote 6.

facts and setting of Stevens v. Vowell do not permit the extrapolation of the view for which it sometimes is cited. The case involved an attack by appellant upon the jurisdiction of the trial court "for the reason that the evidence wholly fails to establish any of the elements required to make out a case under 15 U.S.C.A. § 78j and Rule X–10B–5." It is rather clear from the opinion that the defendant knowingly made untrue statements and omissions of material facts which by their very nature and context were misleading.[12] There are two quotations which frequently have been applied out of context to indicate that this circuit in 10b–5 cases recognizes neither any species of scienter nor reliance as essential elements. We have already quoted one. The other is as follows:

"It will be observed that neither the statute nor the rule requires that the manipulative or deceptive device or contrivance be a part of or actually transmitted in the mails or instrumentality of interstate commerce. All that is required is that such a device or contrivance be used or employed in connection with the use of the instruments of interstate commerce or the mails."

This court concluded "that there is abundant evidence to establish each and every element required under the statute and rule. The trial court therefore had jurisdiction over the subject matter."

The same year Judge Doyle, author of Trussell v. United Underwriters, Ltd., 228 F.Supp. 757 (D.Colo.1964), still the leading district court case on the subject, had before him again in Parker v. Baltimore Paint And Chemical Corp., 244 F.Supp. 267 (D.Colo.1965), the question of whether scienter and reliance were essential elements. It was stated:

"We concluded in Trussell that these elements are essential in a 10b–5 case. Our reasons are extensively articulated in that decision, and although the case at bar involves an allegedly defrauded seller rather than a purchaser, the rule applies nevertheless. Plaintiff argues that the decision of this Circuit in Stevens v. Vowell (10 Cir. 1965) 343 F.2d 374, dispenses with the mentioned requirements. However, Stevens does not specifically consider the question and the dicta which is the source of the plaintiff's contention does not in our opinion require adoption of a ruling which is contrary to that expressed in Trussell."

In Gilbert v. Nixon, 429 F.2d 348 (10th Cir. 1970), *supra*, this court agreed with the district court that the fractional interests in suit were securities within the meanings of 15 U.S.C. § 77b(1) of the 1933 Act, and 15 U.S.C. § 78c(a)(10) of the 1934 Act, and K.S.A. § 17–1252(j). The appellants in their brief had considered liability under Rule 10b–5 to be most appropriate but they also pursued remedies under, and the trial court appeared to have based its decision upon, claimed violations of Section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*(2), comparable to the Kansas statute. This court considered whether the trial court in denying recovery by appellants applied to the evidence the correct legal principles. It recognized that purchasers of securities have an implied action for damages under 10b–5 in addition to a

---

12. See Kohn v. American Metal Climax, Inc., 458 F.2d 255 (3d Cir.), cert. denied, 409 U.S. 874 (1972), in which it was observed:

"Stevens v. Vowell, 343 F.2d 374 (10th Cir. 1965), is yet another example of a court asserting that it is not necessary to allege common law fraud to recover damages under Section 10(b), although the facts demonstrate a situation where outright manipulation, or, indeed, actual fraud did exist. Plaintiff, in *Stevens*, sued to recover the amount paid for the purchase of stock in a corporation created to exploit an invention for the return of arrows in an archery lane. The defendants had misrepresented the ownership of the invention, their intent to build archery lanes to exploit the invention, and their intent to share funds others had invested. Although the court indicates absolute liability for material misrepresentations, relying on *Matheson* [Matheson v. Armbrust, 284 F.2d 670] and *Royal Air Properties* [Royal Air Properties v. Smith, 312 F.2d 210], nonetheless the underlying facts demonstrate conduct from which intent to defraud is readily inferrable."

remedy under Section 12(2) and that the two provisions, as interpreted, are not altogether consistent with each other, citing *Trussell*. The court then said:

"Had appellants invoked Section 12(2) alone our task in formulating the proper legal standards for recovery would have been simplified. We note, however, that a private action under Rule 10b–5 originated in the need for a sellers remedy where none had otherwise been provided. Once a remedy was implied for the seller, it was extended to include the buyer even though relief was already available to him under Section 12(2). Since in this case recovery is sought under both provisions, we resolve any conflict between them in favor of Section 12(2), where the statutory remedy is explicit, [footnotes omitted except to note that in footnote 14 the court says '[i]n reaching this conclusion we do not mean to say that buyers never have an action under 10b–5 independent of Section 12(2).']."

Later in the opinion it was commented:

"While the purchaser has been required to prove his reliance in an action under 10b–5 by some courts, [citing among others Trussell v. United Underwriters, Ltd., 228 F.Supp. at 773, *supra*] we do not place the burden on appellants in this case as we have decided that in such circumstances the rules of Section 12(2) should prevail. We held in Woodward v. Wright, *supra*, 266 F.2d [108] at 116, that 'to say that purchaser reliance is a prerequisite to seller liability is to import something into the statute which is not there.' We do not think the result should be otherwise because appellants sought recovery under 10b–5 as well as Section 12(2).

"One is not to be held liable, however, because of his misleading misrepresentation or omission of material fact, the truth of the matter being unknown to the purchaser, if the party responsible for the misrepresentation or omission sustains the burden of proving that he did not know, and in the exercise of reasonable care could not have known that it was a misrepresentation or omission. Once again, as in the case of reliance, the seller's burden of proving lack of scienter, made necessary by the specific provisions of Section 12(2), see Woodward v. Wright, *supra*, 266 F.2d at 116; Wilko v. Swan, 346 U.S. 427, 431, 74 S.Ct. 182, 98 L.Ed. 168 (1953), should not be affected in this case by different requirements in this regard under 10b–5."

In Mitchell v. Texas Gulf Sulphur Company, 446 F.2d 90 (10th Cir. 1971), *supra*, this court again referred to Stevens v. Vowell, stating:

"In civil actions instituted on the basis of 10b–5 violations, the keynote of which is fraud, the full panoply of common law fraud elements—misrepresentation or nondisclosure, materiality, scienter, intent to defraud, reliance and causation—have crept in and played varying roles of significance. However, a number of these elements have diminished in importance in private actions, and we have stated in Stevens v. Vowell, 343 F.2d 374, 379 (10th Cir. 1965), that '[i]t is not necessary to allege or prove common law fraud to make out a case under the statute and rule. It is only necessary to prove one of the prohibited actions such as the material misstatement of fact or the omission to state a material fact.' Notwithstanding, appellants urge that appellees have failed to establish the presence of most of the common law fraud ingredients, i. e., misrepresentation or nondisclosure of material facts, scienter, intent to defraud, reliance, and some semblance of privity. A full measure of our attention will be devoted to each of these constituent parts."

After disposing of the claim of immateriality by holding that "[t]he trial court had little difficulty finding from the testimony of Fogarty and other corporate officers that the April 12 statement was made in a manner reasonably

calculated to influence the investing public", this court proceeded to examine the problem of scienter. Judge Hill, the author of Stevens v. Vowell, stated for the court:

"But while some degree of scienter is required, it does not equate with the intent to defraud required in a common law fraud action. Globus v. Law Research Service, Inc., 418 F.2d 1276 (2d Cir. 1969); Heit v. Weitzen, supra [402 F.2d 909]; Astor v. Texas Gulf Sulphur Company, 306 F.Supp. 1333 (S.D.N.Y.1969). Contrariwise, in the Eighth Circuit, City National Bank of Fort Smith, Ark. v. Vanderboom, 422 F.2d 221 (8th Cir. 1970), and the Ninth Circuit, Ellis v. Carter, 291 F.2d 270 (9th Cir. 1961), the rule is that scienter is not required to maintain a private 10b–5 damage action. We have dealt with the issue under significantly different circumstances in Stevens v. Vowell, 343 F.2d 374 (10th Cir. 1965). But in Gilbert v. Nixon, 429 F.2d 348, 357 (10th Cir. 1970), we considered the identical issue in a case involving Section 12(2) and Rule 10b–5. The rule there articulated is applicable here. 'One is not to be held liable . . . because of his misleading misrepresentation or omission of material fact, the truth of the matter being unknown to the purchaser, if the party responsible for the misrepresentation or omission sustains the burden of proving that he did not know, and in the exercise of reasonable care could not have known that it was a misrepresentation or omission.'

"Two times during his opinion the trial judge recited: '[T]he record here discloses that the press release issued by defendants was misleading, intentionally deceptive, inaccurate and knowingly deficient in material facts.' . . . Confronted with the abundance of evidence in the record, we cannot conclude that TGS sustained its burden of proving that it did not know of the misrepresentation, nor was it demonstrated that with due diligence TGS could not have known of the faultiness of the statement."

In Reyos v. United States, 431 F.2d 1337 (10th Cir. 1970), the trial court was reversed by this court inter alia because of the lack of proof of "reliance":

"In Stevens v. Vowell, 343 F.2d 374 (10th Cir.), we considered a private action under Regulation 10b–5. The trial court had made findings that critical facts had been concealed from the plaintiff investor and misrepresentations were made to him. The court also specifically found that the plaintiff had there relied upon all the representations made to him by the defendants. These findings were supported by the record. There was no issue on appeal as to reliance, and little as to the fact of misrepresentations. We there stated that it was not necessary to prove common law fraud, but necessary to prove 'one of the prohibited actions.' This referred to one of the (a), (b) or (c) subsections of the rule. In the cited case the (b) subsection was relied upon and with the reliance established the case was proven. The opinion does not hold that reliance is not required, as the plaintiff urges. It is a basic element of a cause of this nature, and was there shown."

In reversing in part and affirming in part the last mentioned decision sub nom., Affiliated Ute Citizens v. United States, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), supra, Mr. Justice Blackmun stated for the court:

"Under the circumstances of this case, involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision . . . This obligation to disclose and this withholding of a material fact establish the requisite element of causation in fact." (Citing Chasins v. Smith, Barney & Co., 438 F.2d 1162, at 1172.)

Richardson v. MacArthur, 451 F.2d 35 (10th Cir. 1971), supra, also cites Stevens v. Vowell, supra, for the proposition that

Rule 10b–5 is a remedial measure to be broadly construed. It was pointed out, however, that there was far more than simply a dispute over the performance of a contract. Various aspects of the evidence lighted up a scheme by MacArthur to convert Richardson's stock, and his corresponding lack of intent to follow through on the contract with Richardson. The case did not focus on the problem of scienter.

Allen v. H. K. Porter Co., 452 F.2d 675 (10th Cir. 1971), was an action by a security brokerage firm and others seeking damages under the Securities Exchange Act for alleged misrepresentations and non-disclosure in connection with defendant's offer to purchase the corporation's debentures. It was held by this court that the reference to foreclosure in the defendant's offer to purchase the debentures and the failure of defendant to advise prospective sellers of the money necessary to rehabilitate the corporation was not such a misrepresentation and non-disclosure as to amount to a violation of the Securities Exchange Act. The opinion states:

"We have also recognized that neither the Rule nor the Securities Exchange Act sets forth the elements necessary to establish civil liability under Rule 10b–5. Reyos v. United States, 431 F.2d 1337, 1347 (10th Cir. 1970). Nor has this court attempted to specify what forms of deception are prohibited; rather we have held that 'all fraudulent schemes in connection with the purchase and sale of securities are prohibited.' Richardson v. MacArthur, 451 F.2d 35 (10th Cir. 1971). Furthermore, '[i]t is not necessary to allege or prove common law fraud to make out a case under the statute and rule.' Mitchell v. Texas Gulf Sulphur Company, 446 F.2d 90, 97 (10th Cir. 1971), citing Stevens v. Vowell, 343 F.2d 374, 379 (10th Cir. 1965)."

Thus, Allen v. H. K. Porter Co., tends to put Stevens v. Vowell in context by demonstrating that the broad language of the latter does not mean necessarily that literal fulfillment of the three elements obviates the necessity of some proof of causation as well as some species of scienter. It is somewhat ironical that this basic and sound recognition is somewhat blurred by Affiliated Ute Citizens v. United States, *supra*, in its rejection of the requirement of proof of causation beyond proof of materiality in the case of omissions to state facts essential to render what was stated not misleading. But the implications of the Supreme Court's opinion was that the element of causation in some form remained and that some degree of scienter is requisite.

Hadsell v. Hoover, 484 F.2d 123 (10th Cir. 1973), involved an action by a buyer of unregistered securities who claimed violation of anti-fraud provisions of the securities regulations against a seller who agreed to repurchase his stock. Reference in the opinion to Stevens v. Vowell did not focus on any question of scienter, it being concluded "that the facts and circumstances developed at trial were clearly sufficient to indicate a scheme to defraud within the meaning of Section 10(b) of the Securities and Exchange Act of 1934."

Financial Indus. Fund, Inc. v. McDonnell Douglas Corp., 474 F.2d 514 (10th Cir.), cert. denied, 414 U.S. 874, 94 S.Ct. 155, 38 L.Ed.2d 114 (1973), was an action by a mutual fund against a corporation for alleged violation of the rule in question. This court held that the evidence was insufficient to establish that the fund exercised due care in making the stock purchase in the open market, that the corporation delayed the issuance of the special earnings statement beyond the point when sufficient information was available for accurate release or when the information could have been collected by the exercise of due diligence, and that the corporation owed a duty to disclose in the circumstances or that the fund relied to its detriment on the corporation's inaction. The opinion does not seem intended to mark any new approach to the problem under discus-

sion, but the following interpretive comments are pertinent:

"There has been much written on the matter of scienter in actions under Rule 10b–5, and especially in the departure from the initial pure fraud concepts. The movement toward modified scienter requirements and the use of negligence language has been fully described. It would serve no useful purpose to analyze it further here. The change has taken place in many jurisdictions. See the decisions of this court hereinafter considered; also, Parrent v. Midwest Rug Mills, Inc., 455 F.2d 123 (7th Cir.); City National Bank of Fort Smith, Ark. v. Vanderboom, 422 F.2d 221 (8th Cir.); Ellis v. Carter, 291 F.2d 270 (9th Cir.).

"We have considered the arguments that to move the standards entirely into the negligence field may likewise move the statutory basis for Rule 10b–5 out from under section 10b, which has no negligence language.

"This court in Gilbert v. Nixon, 429 F.2d 348 (10th Cir.), considered an appeal which raised claims based on Rule 10b–5 and also on section 12(2) [15 U.S.C. § 77*l*(2)]. The court there referred to the statutory standards in section 12(2) and held a similar test to be applied in the combined claim. In Mitchell v. Texas Gulf Sulphur Co., 446 F.2d 90 (10th Cir.), a Rule 10b–5 case, we referred to the holding in Gilbert v. Nixon, and there said that the defendant, Texas Gulf Sulphur, did not sustain its burden of proving that it did not know the statement in issue was false, '. . . nor was it demonstrated that with due diligence TGS could not have known of the faultiness of the statement.' See also Allen v. H. K. Porter Co., 452 F.2d 675 (10th Cir.). The Mitchell case was decided after the case before us now.

.    .    .    .    .    .

"To prevail the plaintiff in this silence case had the burden of proof to establish that it exercised due care in making its stock purchase, that the defendant failed to issue the special earnings statement when sufficient information was available for an accurate release (or could have been collected by the exercise of due diligence), and to show there existed a duty owed by the defendant to the plaintiff to so disclose as to do otherwise would be a violation of Rule 10b–5, and upon inaction under such showing plaintiff relied to its detriment. The defendant as a separate defense could show either good faith or the exercise of good business judgment in its acts or inaction. . . .

"Mention should be made of our decision in Mitchell v. Texas Gulf Sulphur Co., 446 F.2d 90 (10th Cir.), where there was no direct holding as to the standard of care required of the defendant as to the contents of a statement actually issued because the statement there concerned was obviously and intentionally misleading, as the trial court and this court indicated. So we did not there expressly require that the defendant meet a burden of showing due care although such would have been a defense. The burden of showing lack of due care in such circumstances is part of the plaintiff's case."

This court recognized the significance of scienter of some kind in 10b–5 cases in its opinion in Andrews v. Blue, 489 F.2d 367 (10th Cir. 1973), but determined it to be present to the requisite extent.

"We must also reject the defendants' argument that the Rule 10b–5 claim fails for lack of proof of scienter. Certainly intent in the odious or malicious sense is not required. The requisite knowledge of falsity is adequately evidenced. See Mitchell v. Texas Gulf Sulphur Co., 446 F.2d 90 (10th Cir. 1971)."

In the case of In Re Four Seasons Securities Laws Litigation, 370 F.Supp. 219 (W.D.Okl.1974), it was observed:

"This court concludes that the law of the transferor forum does not require proof of facts amounting to common law fraud before a plaintiff can

recover under one or more of the Federal statutes upon which the first six claims in the complaint in the instant case are based, and under one or more of the Ohio statutes upon which the Seventh, Eighth, Ninth and Tenth claims are based. James v. Gerber Products Company, 483 F.2d 944, 946 (6 Cir. 1973). Tenth Circuit law is similar. Stevens v. Vowell, 343 F.2d 374, 379 (10 Cir. 1965); Mitchell v. Texas Gulf Sulphur Company, 446 F.2d 90, 97 (10 Cir. 1971)."

The latest decision touching upon the point is Kerbs v. Fall River Industries, Inc., 502 F.2d 731 (10th Cir. 1974), *supra*. With reference to the statement that the ". . . securities laws should be construed not technically and restrictively, but flexibly in order to effectuate their remedial purpose", a footnote adds:

"6. It will also be observed that, while the Courts of Appeals are divided on the question of the necessity of proving scienter to establish liability under Rule 10b–5, the pronouncements of this circuit on the matter have been clear and consistent. As stated by Judge Hill in Stevens v. Vowell, *supra*, 343 F.2d at 379: '. . . It is not necessary to allege or prove common law fraud to make out a case under the statute and rule. It is only necessary to prove one of the prohibited actions such as the material misstatement of fact or the omission to state a material fact.' "

Despite varying emphases, the strong strand of consistency and reason running through the decisions of this court on the subject under discussion beginning with Stevens v. Vowell is readily discernible when viewed as a whole; statements considered separately or out of context not infrequently have been subject to misinterpretation. For this reason we have been persuaded thus to review the decisions in this circuit insofar as they bear directly upon the necessity of scienter and reliance in Section 10(b) actions.[13] From their common principles and applications may be deduced the propositions that there is required something additional by way of scienter or conscious fault[14] than mere negligence, and something more by way of reliance or causation in fact [14] than some abstract wrong expending its force entirely upon itself.

In determining how much more, or the existence of other required elements in view of the circumstances of particular cases, there must be kept constantly in mind the teaching of Stevens v. Vowell that the federal securities acts are not frozen into the old common law patterns; and that they must be interpreted flexibly and progressively, not technically nor grudgingly, to fairly effectuate their remedial purpose. Thus this court has consistently resisted and surmounted common law obstacles against relief from schemes, artifices, and courses of conduct where conscious fault designed to cause damages to either buyers or sellers of securities has been perceivable. "Nor has this court attempted to specify what forms of deception are prohibited;

---

13. We have been able to cover only the major thrusts of the opinions with reference to these limited aspects and with little reference to the circumstances individually involved. Hence for any more particular focus the cases themselves must be analyzed. Especially is this true with reference to the interrelationship between the 1933 and the 1934 Acts and the problem of burden of proof when submissions involve reliance upon the provisions of both Acts. We have not been concerned here with burden of proof, criminal cases, expressly authorized causes of action, enforcement proceedings as distinguished from private civil actions, nor with other unraised problems in this complicated field.

14. Perhaps part of the difficulty with the elements of "scienter" and "reliance" in application stems from the words themselves rather than broad concepts. From the common law these words have been transported by name into an environment inhospitable to at least part of what they meant in their old one. It may be that "reliance" and "scienter" at length will have carried the load long enough in the securities context so that as faithful but over-strained and superannuated work horses they may be put out to pasture while their more adaptable offspring "causation in fact", Affiliated Ute Citizens v. United States, 406 U.S. 128, 154 (1972), and "conscious fault", take up the burden except for limited services in more suitable fields.

rather we have held that '*all* fraudulent schemes *in connection* with the purchase and sale of securities are prohibited.' " Allen v. Porter, 452 F.2d 675 (10th Cir. 1971), *supra.* But this court has repeatedly declined to extend the acts to cases of simple negligence not involving some fraudulent purpose or species of scienter within their scope and purpose. This same restrained flexibility may explain the rejection of briefer but more rigid periods of limitations provided by the 1933 Act and various state Blue Sky acts, for the longer and more flexible periods ordinarily embraced in state laws for cases of fraud. The latter are more adaptable to the remedial purposes of implied rights of action under Section 10(b),[15] despite the seemingly paradoxically adoption in special circumstances of the burden of proof provisions of the 1933 Act in furtherance of the remedial purposes of the 1934 Act.[16]

If the trial court had charged the jury in effect that untrue statements or omissions resulting from mere negligence without any manner of scienter, conscious fault, intention or recklessness, would have justified a recovery against Conk, this would have been fundamentally or palpably wrong and subject to correction here despite question as to the sufficiency of exceptions below.[17]

But for the very reason that the language of the Act tells us that such a charge would have represented a fundamental departure from its purpose and meaning, we believe that the use in the instructions of the language of the rule implied that simple negligence would not be enough.[18] To us there is an undoubtable implication of fault beyond mere

carelessness in "engaging in any device, scheme, or artifice to defraud or the making of untrue statements of material fact or omitting to state any material fact necessary in order to make statements made in the light of the circumstances not misleading." Laymen, in the context of the other instructions, would be likely to sense this, even though there is ground for dispute among lawyers that "untrue" statements and the "misleading" of others by omissions to state material facts could result simply from innocent though negligent oversight.

■ There is nothing in the record to suggest that the jury was misled in this case in any fundamental sense. On the contrary, even the partial record placed before us suggests that the nature of the conduct on which appellant's liability must have been predicated, as distinguished from the type of conduct on the basis of which his codefendant was acquitted, was necessarily pursued knowingly and intentionally and with purpose to mislead. A party who claims plain error within the reach of Rule 51, Fed.R. Civ.P., cf. Rule 52, Fed.R.Cr.P., has the heavy burden of demonstrating fundamental injustice. This the plaintiff has not done.

■ We do not mean to suggest generally that submission of the issues in the statutory language is enough when a proper request to charge is submitted to the trial court or timely exception is taken to the instructions as given or to a failure to charge on the subject. Indeed the defendant protected by such a request or exception is entitled to have his theory of defense specifically submitted to the jury in the context of the particu-

---

**15.** See footnote 5.

**16.** Financial Indus. Fund, Inc. v. McDonnell Douglas Corp., 474 F.2d 514 (10th Cir. 1973), *supra*; Mitchell v. Texas Gulf Sulphur Company, 446 F.2d 90 (10th Cir. 1971), *supra*; Gilbert v. Nixon, 429 F.2d 348 (10th Cir. 1970), *supra*.

**17.** Cf. Fed.R.Cr.P. 52(b). See Hormel v. Helvering, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed.

1037 (1941); Smith v. Welch, 189 F.2d 832 (10th Cir. 1951); State v. Neustadt, 149 F.2d 143 (10th Cir. 1945); National Fire Ins. Co. v. School Dist. No. 68, 115 F.2d 232 (10th Cir. 1940). Cf. Murphy v. Dyer, 409 F.2d 747 (10th Cir. 1969).

**18.** See footnote 8 for the trial court's charge as to Conk.

lar record facts and consistently with the decisions of this court on the points under discussion.

We hold that the instructions sufficiently recognized the requirement of "scienter" or conscious fault to withstand an attack on the ground of fundamental error and that, beyond this, there was no request or exception preserving for review any technical deficiency. The instructions covering reliance or causation in fact were free from error. Appellant's other contentions are without any merit.

No request to charge was submitted in this area by appellant, nor were timely and sufficient exceptions taken as to any instruction. It is true that at various points during the trial appellant's counsel had urged the court to include an instruction on "scienter". His approach initially was oblique, being largely in support of the argument that if Rule 10b–5 scienter was to be omitted in view of the 1933 Act's conditionally dispensing with this element, the shorter statute of limitations provided by the 1933 Act should be applied to bar plaintiffs' recovery. Losing on his major premise, counsel did press the independent requirement of scienter before the case was argued and the instructions were given.

But despite adequate opportunity to do so, he did not furnish any request to charge and, indeed, failed to supply any help whatever to the trial court in actually framing a proper instruction on the point. After the instructions were given the only statement even resembling an exception was "I would just have a general exception, your Honor, as I indicated earlier, that I think there should have been more scienter in the instruction as a whole, and I understand the Court's position." This fell far short of a timely or effective exception to pre-serve the point in view of the absence of any fundamental error as we have seen.[19]

Affirmed.

---

19. Radio Corporation of America v. Radio Station KYFM, Inc., 424 F.2d 14 (10th Cir. 1970); Smith v. Greyhound Lines, Inc., 382 F.2d 190 (10th Cir. 1967); Great-West Life Assurance Company v. Levy, 382 F.2d 357 (10th Cir. 1967); Dunn v. St. Louis-San Francisco Railway Company, 370 F.2d 681 (10th Cir. 1966). Cf. Fey v. Walston & Co., Inc., 493 F.2d 1036, 1047 (7th Cir. 1974).