Dale B. LOVERIDGE and Owen W. Johnson, Plaintiffs-Appellees,

v.

Verne E. DREAGOUX, Archie D. Burton, Max Hogan, Everett Dahl, Defendants-Appellants.

No. 80–1660.

United States Court of Appeals, Tenth Circuit.

May 18, 1982.

David E. Leta, Roe & Fowler, Salt Lake City, Utah (Gary F. Kennedy, Roe & Fowler, Salt Lake City, Utah, with him on the brief), for plaintiffs-appellees.

Everett E. Dahl, Midvale, Utah, for defendants-appellants Burton and Dahl.

Lambertus Jansen, Salt Lake City, Utah, filed a brief on behalf of defendant-appellant Verne E. Dreagoux.

Before SETH, BARRETT and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The above named defendants were named as defendants in an action for damages brought by the plaintiffs Loveridge and Johnson for damages which allegedly resulted from the violation of § 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 issued thereunder. In separate counts the defendants were also charged with breach of contract. Defendant Dreagoux was adjudged in violation of § 10(b) and Rule 10b–5. Burton and Dahl were found to be in breach of contract in accordance with Utah Code Ann. § 16–10–139. The three defendants were found to be jointly and severally liable to each plaintiff for $5,000 plus 6% interest per annum. Burton and Dahl were additionally found to be jointly and severally liable to each plaintiff for $2,000 in attorneys fees and 7% interest per year on each $5,000 debenture, which represents the remainder of the interest agreed upon for the debentures, 15% per annum.

The sale of the debentures in question occurred on April 23rd, 1971, at which time Johnson purchased a 15% serial debenture from Am-Phil, Inc. Plaintiff Loveridge purchased an identical debenture from Am-Phil on April 28, 1971. Each was in the face amount of $5,000 and bore interest at

the rate of 15% per annum and fell due on May 1, 1973. Each of the debentures was represented as one of twenty such debentures of an authorized issue of $100,000 which Am-Phil, Inc., purportedly a corporation of the State of Nevada, had issued. Am-Phil was not, in truth, incorporated under the laws of Nevada until April 29, 1971, one day after plaintiff Loveridge purchased his debenture and five days after Johnson purchased his. Each debenture was signed by the defendants Burton and Dahl in their capacities as president and secretary of Am-Phil. The plaintiffs purchased debentures 19 and 20, the last numbered debentures in the series. At that time only one other debenture had been sold and none were sold thereafter.

The plaintiffs had been directed to the availability of the Am-Phil debentures by their broker. Plaintiffs met separately with defendant Verne Dreagoux, an incorporator and later director of Am-Phil. Dreagoux indicated to the plaintiffs that this was a joint venture concept to import commodities from the Philippines through a Philippine corporation called La Mancha, which was to provide raw materials. Am-Phil was to be responsible for the transportation of these materials to the United States and Rondeau Pacifica, Inc. was to carry out the marketing and promotion of the business.

The $15,000 from the debentures was exhausted without the corporation ever engaging in the intended business. As a result the plaintiffs failed to be paid on the debentures when they came due on May 1, 1973. Soon thereafter they instituted this suit to recover their investment. Am-Phil has no assets and filed no answer to the complaint in the trial court and judgment was granted against it.

On appeal the defendant Dreagoux contends:

1. That the use of the telephone to make intrastate calls did not satisfy the Interstate Commerce requirement of § 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5.

2. That the trial court erred in admitting evidence of the date on which the Articles of Incorporation of Rondeau Pacifica, Inc. and Am-Phil, Inc. were filed and thereby disregarded the facts stipulated in the pre-trial order.

3. That plaintiffs' claims are barred by the Utah three year statute of limitations.

4. That the trial court made no finding that Dreagoux had the requisite scienter so as to satisfy Rule 10b–5.

On behalf of defendants Burton and Dahl it is contended that:

1. The trial court did not have jurisdiction over the pendent state law claim for breach of contract.

2. The trial court erred in applying § 16–10–139 of the Utah Business Corporation Act to the defendants Burton and Dahl inasmuch as Am-Phil was a Nevada corporation, not a Utah one.

3. The trial court erred in finding the defendants guilty of violating § 16–10–139 of the Utah Business Corporations Act when this specific statute as a theory of liability was not contained in the pleadings in express terms.

I.

### The Dreagoux Contentions

*Reliance upon intrastate telephone calls to confer jurisdiction under § 10(b) and Rule 10b–5.*

The trial court found that the defendant made representations to the plaintiffs in connection with the sale of the debentures which were violative of § 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78J(b)) and Rule 10b–5 of the Rules of the Securities and Exchange Commission. (17 C.F.R. § 240 10b–5).

The first contact which the defendant had with each of the plaintiffs was by phone. The defendant contends that these intrastate calls are not sufficient to satisfy the jurisdictional requirement of the Securities and Exchange Act in that an instrumentality of interstate commerce must be used in connection with the alleged decep-

tion. We conclude that this argument lacks merit. *Kerbs v. Fall River Industries, Inc.,* 502 F.2d 731 (10th Cir. 1974). In this case we specifically held that proof of intrastate telephonic messages in connection with the employment of deceptive devices or contrivances is sufficient to confer jurisdiction in a § 10(b) and Rule 10b–5 action. *Accord Alley v. Miramon,* 614 F.2d 1372 (5th Cir. 1980). This court's decision in *Kerbs, supra,* settled the issue for this circuit. In that case this court said:

> both intrastate and interstate telephone communications are part of an aggregate telephonic system as a whole. Cf. *Lipinski v. United States,* 251 F.2d 53, 56 (10th Cir. 1958). And as long as the instrumentality itself is an integral part of an interstate system, Congress has power, when necessary for the protection of interstate commerce to include intrastate activities within its regulatory control. *See Weiss v. United States,* 308 U.S. 321, 60 S.Ct. 269, 84 L.Ed. 298 (1939); *NLRB v. Jones and Laughlin Steel Corp.,* 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1936). Accordingly, we hold that proof of intrastate telephonic messages in connection with the employment of deceptive devices or contrivances is sufficient to confer jurisdiction in a 10(b) and Rule 10b–5 action. * * * " *Id.* at 738.

The trial court's admission of evidence of the date on which the Articles of Incorporation of Rondeau Pacifica, Inc. and Am-Phil, Inc. were filed.

The defendant takes the position that although the plaintiffs were persuaded to believe a false statement as to the date on which the Articles of Incorporation of the corporations were filed, the fact stipulated binds the plaintiff even though admittedly false. We are unable to accept such a contention. True, the pre-trial court order refers to the corporate status of Am-Phil. Section 3 entitled "uncontroverted facts", states that at the time the complaint was filed, "defendant Am-Phil, Inc. was a Nevada corporation engaging in the business of promoting and developing commercial markets and trading in the far east in association with its parent corporation, Rondeau Pacifica, Ltd."

However, as of the time of trial there was evidence establishing the true fact that the Articles of Incorporation for Am-Phil were not filed with the Secretary of State of Nevada until April 29, 1971. This was used by the court as evidence to show that at the time the debentures were sold, that is April 23rd and 28th respectively, Am-Phil was not a *de jure* corporation, as represented by the defendant. The defendant argues that the trial court erred in admitting this evidence because it is contrary to the uncontested facts in the pre-trial order. However, the true fact is that the Articles of Incorporation were not filed at the time of sale stated in the pre-trial order. However, this court is not obligated to perpetuate a known misstatement. The pre-trial order only says that Am-Phil was a Nevada corporation at the time the complaint was filed. This was a contested issue of fact and the court ruled against the defendant. It found that Am-Phil did not come into existence until the Articles of Incorporation were filed, that is on April 29, 1971.

*The applicable Utah statute of limitations.*

The statute in question, Utah Code Ann. § 78–12–26(3) (1953) provides that an action for relief on the ground of fraud or mistake has to be brought within three years but that the cause of action in such case shall not be deemed to have accrued "until the discovery by the aggrieved party of the facts constituting the fraud or mistake." Applying that statute to the case before the court, it is to be concluded that the statute of limitations did not run on the injury here in question. Surely the part of the statute which says that it shall not start to run until the discovery by the aggrieved party of the facts constituting the fraud is pertinent here. This construction is in accord with the opinions of this court that have found the Utah Statute of Limitations to apply to actions brought pursuant to § 10(b) and 10b–5 of the Act. *Clegg v. Conk,* 507 F.2d 1351, 1353 n.5 (10th Cir.

1974); *Richardson v. MacArthur*, 451 F.2d 35 (10th Cir. 1971); *Mitchell v. Texas Gulf Sulphur Company*, 446 F.2d 90 (10th Cir. 1971).

The defendant's argument is that at the time of the purchase, the plaintiffs were put on notice that the security in question was subject to problems. They say the plaintiffs should have questioned who the other purchasers were before they purchased the debentures. But the testimony indicates that plaintiffs relied on statements of Dreagoux that all of the other debentures had been sold, believing the venture to be well capitalized and therefore deciding to make their investment in Am-Phil. Further testimony by the plaintiffs was that they had been told when they purchased the debentures that they would receive quarterly reports on Am-Phil's progress. None were forthcoming. This, too, defendant contends, should have put the plaintiffs on notice that the business was not progressing as intended long before the date of maturity. Therefore the statute of limitations started to run, defendant contends, if not at the time of purchase, then soon after the first or second quarterly report failed to appear. However, the trial court found that the statute did not begin to run until the maturity date for the debentures had passed so the plaintiffs became aware that no payments were forthcoming. Accordingly, the plaintiffs had three years from May 1, 1973 in which to institute an action for fraud. Inasmuch as this action was filed April 14, 1975 the court found that it was well within the three year period. We have considered the record and conclude that this ruling was proper.

*The question whether Dreagoux had the requisite scienter sufficient to find him liable under Rule 10b–5.*

The answer is that the necessary scienter was present. This court has held that a finding of scienter is necessary to impose liability under 10b–5. *Clegg v. Conk, supra*, at 1361–63. There the court required that there be a finding of something more than mere negligence, something additional by way of scienter or conscious fault. *Id.* at 1361. In *Andrews v. Blue*, 489 F.2d 367 (10th Cir. 1973) this court found the defendant had "the requisite knowledge of the falsity" for liability in a 10b–5 action. *See Mitchell v. Texas Gulf Sulphur Co.*, 446 F.2d 90 (10th Cir. 1971).

Defendant Dreagoux further argued that the judgment against him for violating Rule 10b–5 should be overturned because the trial court made no specific finding of the existence of scienter on the part of any defendant and that this omission is fatal.

The finding of liability under 10b–5 by the trial court was based on a number of misrepresentations made by Dreagoux. Included is the fact that Dreagoux represented to the plaintiffs that all but two of the twenty debentures were sold and indicated that the plaintiffs must act quickly if they intended to take advantage of this opportunity; the fact was that only one other debenture had been sold at the time. This impression was enhanced when they were given the last numbered debentures in the series.

Also Dreagoux represented to the plaintiffs that Am-Phil and Rondeau Pacifica were formally incorporated at the time of the debenture purchase, when in fact the formal incorporation took place subsequent to the sale.

Dreagoux also told the plaintiffs that the money from the sale of the debentures would be used to lease ships, but instead the money was used for payment of pre-incorporation expenses and no ships were ever leased by Am-Phil.

The trial court considering all of the misrepresentations, found that sufficient evidence existed that Dreagoux violated Rule 10b–5. Implicit in that finding is that the defendant had the requisite "scienter."

The term "scienter" as applied to conduct necessary to give rise to an action for civil damages under the Act and the Rule refers to a mental state embracing intent to deceive, manipulate or defraud. *Ernst and Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); *Holdsworth v. Strong*, 545 F.2d 687 (10th

Cir. 1976); *Wertheim and Co. v. Codding Embryological Sciences, Inc.*, 620 F.2d 764 (10th Cir. 1980).

■ Dreagoux either knew of the falsity of the information he was giving out or he acted in reckless disregard of its truth or falsity and intended to deceive or mislead the plaintiffs so that they would purchase the debentures. The trial court did not need to make any specific finding of scienter because the intent to defraud and/or reckless disregard for the truth on the part of Dreagoux was shown by the misrepresentations that the trial court found that he knowingly made. Thus the finding of the trial court should not be overturned by this court in the absence of clear error. F.R. C.P. Rule 52. *Ahern v. Veterans Administration*, 537 F.2d 1098 (10th Cir. 1976); *Beltronics, Inc. v. Eberline Instrument Corporation*, 509 F.2d 1316 (10th Cir. 1974). No such error exists in this case.

## II.

### Contentions of Burton and Dahl as to Alleged Breach of Contract

*The question whether the evidence supports the conviction of defendants Burton and Dahl for violation of the Utah Corporation Code, § 16–10–139, for assuming to act as a corporation without the authority to do so.*

■ The answer to the question is yes. The appellants had no contact with the plaintiffs; they simply signed the debentures in their official capacities as officers of the corporation. The defendants maintained, therefore, that there is no jurisdiction over them whereby they can be found guilty of the violation of § 16–10–139 of the Utah code, which specifically holds that persons who did what the defendants did are to be held jointly and severally liable for all debts and liabilities incurred or arising as a result thereof. Unquestionably, the judge found the defendants guilty of violating this statute and the trial court's finding that it had jurisdiction to adjudicate this state claim was correct. Jurisdiction arose under § 27 of the Securities and Ex-

change Act of 1934. The other causes of action arose under state law but were pendent to the federal claim, all of which had a common basis in fact and could therefore be heard by the trial court. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). *Hanraty v. Ostertag*, 470 F.2d 1096 (10th Cir. 1972) held that the federal district court had pendent jurisdiction over the state law claims based on breach of contract and common law fraud because the claims all arose from the same nucleus of operative facts as the pleaded violations of § 10(b) and 10b–5. The trial court properly adjudicated all of plaintiffs' claims in this case.

The two defendants, Burton and Dahl, challenge the judgment against them on two grounds; first, on the basis that the recovery based on the Utah Code is beyond the scope of the pleadings, and second, that the Utah Corporation Code does not apply to Am-Phil, a Nevada corporation.

*The argument that liability based on § 16–10–139 is beyond the scope of the pleadings.*

■ The trial court found that although the plaintiffs did not plead § 16–10–139 in specific terms, they did specifically seek recovery against each individual defendant for breach of contract. The court found that this was sufficient to give the defendants notice that they could be held individually liable for what appeared to be a corporate obligation. The trial court did not apply any new theory when it held defendants liable under § 16–10–139. Also there was no error in holding that the evidence supported a conclusion that the statutes were violated. The fact that the defendants had ample notice of the intent to charge them with breach of contract and considering that there was no indication from the defendants that the evidence they presented at trial would have been any different if § 16–10–139 had been specifically set forth, no error arises from the use of this approach by the trial court.

*The applicable law on the subject of incorporation.*

We turn now to the issue as to whether the state law of Utah or that of Nevada applies to the breach of contract claims. In diversity cases the trial court must apply the conflicts principles of the forum state. *Mullinax Engineering Co. v. Platte Valley Construction Co.*, 412 F.2d 553 (10th Cir. 1969); *Wilshire Oil Co. v. Riffe*, 409 F.2d 1277 (10th Cir. 1969). Despite the fact that federal jurisdiction is not based on diversity in this case but on § 27 of the Securities Exchange Act, the same conflicts doctrine applies in a federal question case such as this, wherein § 27 of the Securities and Exchange Act is applicable. The federal court is required to follow the conflicts of laws rules prevailing in the forum state. *Boone v. Royal Indemnity Company*, 460 F.2d 26 (10th Cir. 1972). This court must apply the conflicts principles of the State of Utah.

In the present case the suit on which the recovery is sought is breach of contract. In determining the validity and enforceability of contract provisions, Utah courts apply the *lex loci contractus* rule and look to the law of the place of the making of the contract. *Crofoot v. Thatcher*, 19 Utah 212, 57 P. 171 (1899); *Trans-American Collections, Inc. v. Continental Account Servicing House, Inc.*, 342 F.Supp. 1303 (D.Utah 1972). In *Trans-American*, the court applied the Utah conflicts of law principles since Utah was the forum and found that since the contract was negotiated and signed in Denver that Colorado law applied. In *Petrof Trading Co. v. Intermountain Research and Engineering Co.*, 424 F.2d 704 (10th Cir. 1970) the laws of the State of Utah were applied in a breach of contract action because the contract was executed in Utah, even though the parties negotiated many of its terms in Nevada.

Clearly, then, Utah law was properly applied to this breach of contract action inasmuch as all of the parties were residents of Utah, the contract was negotiated and executed in Utah and the place of performance as stated on the debenture was Utah. The only contact with any other state was that Am-Phil, one of the defendants, became a Nevada corporation after the execution of the contracts sued upon.

*The correctness of applying § 16–10–139 to Burton and Dahl.*

One more question: Did the trial court correctly apply Utah law, specifically § 16–10–139, to defendants Burton and Dahl. Deference is to be accorded the views of a resident federal district judge with respect to the interpretation and application of the law of his state absent controlling precedents held by the highest court of that state. *Matthews v. IMC Mint Corporation*, 542 F.2d 544 (10th Cir. 1976). If the state court has spoken, the question is, then, one of law. Appellate review is then governed by the "clearly erroneous" standard. Reversal would be required only if the appellate court's review results in a firm conviction that a mistake has been made. F.R.C.P. Rule 52, *Muller v. United States Steel Corporation*, 509 F.2d 923 (10th Cir.), *cert. denied*, 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975); *Mustang Fuel Corporation v. Youngstown Sheet & Tube Co.*, 561 F.2d 202 (10th Cir. 1977).

In *Gillham Advertising Agency, Inc. v. Ipson*, 567 P.2d 163 (Utah 1977) the Utah Supreme Court found a racetrack operator personally liable for an advertising debt of his Nevada corporation, according to the provisions of Utah Code Ann. § 16–10–139, the corporation having become defunct under the laws of Nevada. The defendant was nevertheless found guilty because he signed a written agreement to pay the advertising bill submitted by the Gillham Advertising Agency for work done to promote a racetrack. At the time the defendant executed the agreement as president of Bonneville Raceways there was no such corporation of which he was president. He never qualified his corporation to do business in Utah. Bonneville Raceways' corporate status was suspended in Nevada for failure to file its annual form and pay the filing fee.

There was a dissenting opinion in *Gillham* which must be noted because it raises the one difficult issue in the case. The argument advanced is that the entire question

of liability of individuals under § 16–10–139 rises or falls on the issue of incorporation. If the court finds that the entity in question, in this case Am-Phil, had legal corporate status at the time the contract was made, then the defendants are shielded from liability. However, if the court finds, as it did in this case and in *Gillham* that the entity did not have a corporate legal status at the time the contract was made, the defendants who presume to act for the non-existent corporation are held personally liable on that obligation.

In our view the Utah law according to *Gillham*, is applicable. It may well be, as dissent argues in the *Gillham* case, that in many instances an effort will be made to apply the law of the state of incorporation to an incorporation question rather than have an injustice result from the failure to have filed the Articles of Incorporation in a timely manner. Such would not be the approach in a case of this kind, however, in which a fraud is being perpetrated. In other words, the plaintiffs were not interested in buying securities in a de facto corporation. When they talked about a corporation, they were speaking of one that was established and financially sound. This is not a question of shielding; this is a question of whether or not they committed a fraud and certainly they did whether it is a de facto or a de jure corporation, because they should have told the plaintiffs the truth about it if they were going to rely on some de facto theory. This disclosure may have resulted in the failure of defendants to sell any securities.

We are not unaware of the rule that the internal affairs of the corporation, such as the relationship of the officers and directors to the corporation, are governed by the state of incorporation. *See* Restatement (Second) of Conflict of Laws, § 309 (1969). In this case the validity of the corporation arises in the context of fraud and misrepresentations made to third parties. Thus, it was not an internal matter.

Utah does have a significant interest in having its law applied. The "corpora-

tion" did all of its business in Utah and Utah has a significant interest in protecting the rights of its citizens in any breach of contract action.

At long last, the rationale behind Utah's adoption of § 16–10–139 was to protect innocent third parties dealing with an entity believing it to be a corporation when in fact it is not a corporation. This rationale applies in this case as well. The plaintiffs invested in Am-Phil in good faith believing it to be a valid corporation. They found out later that it was not and, as a partial result of this misrepresentation, lost their entire investment. Inasmuch as Am-Phil and its representatives chose to do business in Utah, there should be no quarrel now with the application of Utah law to this controversy. It is not a miscarriage of justice to apply Utah corporation law to the solution of the case, just as the trial court did.

For the reasons, then, that none of the defendants have offered any argument that tends to favor them in deciding the merits of the case, it follows that the judgment of the district court should be and the same is hereby affirmed.