GILLHAM ADVERTISING AGENCY, INC., a corporation, Plaintiff and Respondent,

v.

Robert K. IPSON, dba Bonneville Raceways, Defendant and Appellant.

No. 14843.

Supreme Court of Utah.

July 12, 1977.

**164**

George H. Speciale, Salt Lake City, for defendant and appellant.

Milo S. Marsden, Jr., Bradford, Marsden, Creer & Liljenquist, Salt Lake City, for plaintiff and respondent.

ELLETT, Chief Justice:

This is an appeal from a summary judgment in favor of Gillham Advertising Agency, Inc. The undisputed facts are as follows:

(1) There was a Nevada corporation named Bonneville Raceways Park.

(2) Ipson was connected with the Nevada corporation.

(3) Ipson tried to qualify his corporation to do business in Utah, but was unable to do so because there was a Utah corporation by the same name.

(4) That Utah corporation owned a racetrack in Utah.

(5) Ipson leased the racetrack personally and began operating it.

(6) Ipson contacted Gillham Advertising Agency, Inc. to promote the racing activity which he personally was conducting.

(7) Gillham conducted the advertising and advanced money in connection therewith.

(8) When Ipson failed to pay, a written agreement was prepared covering the fees and setting a time and the conditions of payment thereof.

(9) Ipson executed the agreement by signing "Bonneville Raceways by Robert K. Ipson, President."

(10) The debt was not paid and this action was commenced.

(11) Ipson claims that he formed a Utah corporation by the name of M.S.J. & Associates in the year 1963, and that the Nevada corporation, Bonneville Raceways Park, was doing business in Utah as the M.S.J. & Associates, a Utah corporation.

(12) Bonneville Raceways Park, a Nevada corporation, was suspended in Nevada.

(13) The amount of the debt is not disputed.

There is no question but that the debt is Ipson's. When he failed to pay, a paper was prepared to set forth with particularity how and when the debt would be paid. That paper did not extinguish the debt owed by Ipson; it merely stated how and under what circumstances it would be paid. There is no evidence or claim that there was a novation whereby the corporation would owe the debt and Ipson would be released from paying it.

It also appears that in signing the paper as he did, Ipson left himself obligated for there was no corporation named Bonneville Raceways of which he was president in Utah; and Ipson claims that the defunct Nevada corporation named Bonneville Raceways Park (not Bonneville Raceways as he signed) did business in Utah under the name of another corporation, to wit: M.S.J. & Associates, a Utah corporation.

By signing the agreement as he did, Mr. Ipson made himself liable even if it had been an original obligation because there was no such corporation of which he was president. (cf. Sec. 16–10–139, U.C.A.1953, as amended).

The judgment is affirmed. Costs are awarded to the respondent.

CROCKETT and HALL, JJ., concur.

MAUGHAN, Justice (dissenting).

Plaintiff brought this action to recover an indebtedness evidenced by a written agreement. Plaintiff, after taking defendant's deposition, moved for summary judgment; the motion was granted. Defendant appeals. We should reverse, and remand for trial.

Defendant was sued in his individual capacity, viz., Robert K. Ipson, dba, Bonneville Raceways. In his answer, defendant denied that he was doing business as Bonneville Raceways. He alleged that the said entity was a corporation, and any amounts due and owing to plaintiff were the corporate debts of Bonneville Raceways.

Plaintiff furnished advertising services to Bonneville Raceways during the months of July, August, and September 1975. The charges therefor were not paid. In January, 1976, plaintiff drafted an agreement, which was presented to defendant. Plaintiff's claim is predicated on this agreement, which provided:

> This agreement acknowledges the fact that in behalf of Bonneville Raceways Gillham Advertising Inc. advanced payment of advertising space, time, and media production in July, August, and September 1975 as follows: . . . .

The agreement specifies the dates, the type of advertising, and the costs. It then recites a promise on the part of Bonneville Raceways to make two payments, each in the amount of $3,097.41 on June 1 and July 1, 1976. It further provides for attorney's fees in case the note is not paid as agreed. Defendant signed the note as follows:

Bonneville Raceways By
Robert K. Ipson Pres.
Jan. 26, 1976

There is no apparent dispute between the parties that defendant executed the agreement in a representative capacity.[1] Plaintiff seeks to hold defendant personally liable for the corporate indebtedness.

Plaintiff took defendant's deposition on August 28, 1976. Defendant testified that Bonneville Raceways was a Nevada corporation. An attempt had been made to qualify the corporation to transact business in Utah; the authorization had been refused by reason of the similarity of its name with an existing Utah corporation. Defendant had leased a racetrack in his individual capacity. The advertising services rendered by plaintiff were for the races conducted on this track. Defendant further testified that the only asset of Bonneville Raceways was M.S.J. & Associates, a Utah corporation, which operated the raceway.

Defendant explained he executed the agreement in the name of Bonneville Raceways, because plaintiff had drawn the agreement in that name. According to defendant, Bonneville Raceway Park and M.S.J. were one and the same entity, since Bonneville owned M.S.J., which in turn operated the raceway. Defendant did not know if there had been a filing with the Secretary of State indicating that M.S.J. & Associates was doing business under any other name.

The trial court ruled defendant was personally liable under Sec. 16–10–139, U.C.A. 1953, as enacted 1961, which provides:

> All persons who assume to act as a corporation without authority so to do shall be jointly and severally liable for all debts and liabilities incurred or arising as a result thereof.

This provision is identical to section 146 of the Model Business Corporation Act, the note to which recites:

> by the name and office of an authorized individual is a signature made in a representative capacity."

---

1. See § 70A–3–403(3) U.C.A.1953, as enacted 1965, "Except as otherwise established the name of an organization preceded or followed

This section is designed to prohibit the application of any theory of de facto incorporation. The only authority to act as a corporation under the Model Act arises from completion of the procedures prescribed in sections 53 to 55 inclusive. [§§ 16–10–48, 49, 50, U.C.A.1953, as enacted 1961.] The consequences of those procedures are specified in section 56 [§ 16–10–51, U.C.A.1953, as enacted 1961] as being the creation of a corporation. No other means being authorized, the effect of section 146 [§ 16–10–139] is to negate the possibility of a de facto corporation.

Abolition of the concept of de facto incorporation, which at best was fuzzy, is a sound result. No reason exists for its continuance under general corporate laws, where the process of acquiring de jure incorporation is both simple and clear. The vestigial appendage should be removed.[2]

Under Sec. 16–10–139, defendant would be individually liable only if Bonneville Raceways does not exist as a corporate entity. Since Bonneville Raceways is a Nevada corporation, whether such an entity is a corporation is determined by the laws of Nevada. The Restatement, Conflict of Laws, Second, Section 296 states:

In order to incorporate validly, a business corporation must comply with the requirements of the state in which incorporation occurs regardless of where its activities are to take place or where its directors, officers or shareholders are domiciled.

Furthermore, Section 298, provides:

An organization formed in one state will be considered a corporation within the meaning of a statute or rule of another state if the attributes the organization possesses under the local law of the state of its formation are sufficient to make it a corporation for the purposes of the statute or rule.

It is important to recognize the distinction between recognition of a foreign incorporation and permitting a foreign corporation to engage in various kinds of acts. The application of Sec. 16–10–139 is confined to a situation where there is no corporate entity in existence; this section does not apply to a foreign corporation which transacts business in this state without a certificate of authority. In the latter instance, the consequences of doing such acts are set forth in Sec. 16–10–120.

Under our prior corporate code, Sec. 16–8–3, which was repealed in 1961, a foreign corporation doing business within this state without authorization was deprived of the benefit of the laws of this state; its contracts, agreements, and transactions were deemed void on behalf of the corporation; and any person acting as its agent was deemed personally liable on any contract made in this state on behalf of the foreign corporation.

Under Section 16–10–120, the failure of a foreign corporation to obtain a certificate of authority to transact business in this state does not impair the validity of any contract or act of the corporation, and the corporation is permitted to defend any action in any court of this state. Thus, there is no statutory provision, which holds an agent liable on the contract of a foreign corporation transacting business in this state without a certificate of authority. Under the majority rule, in the absence of definite statutory authority, there is no personal liability for one contracting on behalf of a noncomplying foreign corporation.[3]

There are jurisdictions, which, without a statutory basis, have held an agent of a foreign corporation, not authorized to do business in the state, is personally liable on a contract made by him in the corporate name. The liability is predicated on the theory that the corporation is without power to contract, and one assuming to act as an agent of a legally incompetent principal renders himself personally liable to the one with whom he has dealt, unless the latter

---

**2.** 2 Model Business Corporation Act Annotated (2nd Ed.) § 146, pp. 908–909.

**3.** 17 Fletcher Cyclopedia Corporations (1960 Rev.Vol.) § 8524, pp. 748–751.

knew of the want of authority.[4] Such a theory would be incompatible with Sec. 16–10–120, wherein a contract of a noncomplying foreign corporation is deemed valid.

In its brief, plaintiff has urged that under Nevada law, Bonneville Raceways, is not a corporate entity, and that Sec. 16–10–139 is applicable. The factual basis in the record is insufficient to support this contention. In defendant's deposition, the following interrogation occurred:

Q Now, is Bonneville Raceways a Utah Corporation?

A No.

Q What is it?

A A Nevada Corporation.

Q Is it in good standing?

A No.

Q Why not?

A Because I just found out from your office that the form hadn't been filed last year and I don't know why it wasn't.

Q It wasn't supposed to be filed by our office.

A Your office informed me it hadn't been filed.

Plaintiff cites N.R.S. 78.175, which provides that a domestic corporation which fails to pay its delinquent filing fee "on or before 12m. of the 1st Monday in March" suffers as a consequence revocation of its charter.

Plaintiff is correct in citing Nevada law in order to determine whether Bonneville Raceways had a legal existence. Restatement, Conflict of Laws, Second, Sec. 299 states:

(1) Whether the existence of a corporation has been terminated or suspended is determined by the local law of the state of incorporation.

(2) The termination or suspension of a corporation's existence by the state of incorporation will be recognized for most purposes by other states.

The defendant's deposition was taken on August 23, 1976. Defendant did not testify as to his personal knowledge but merely repeated hearsay that a requisite filing had not been made. He identified the alleged deficiency as occurring "last year." If this reference were to 1975, under the Nevada statute, N.R.S. 78.175 the charter would not be revoked until March 1, 1976. The required filing date for 1975 was July 1st.

The agreement upon which plaintiff bases its claim was executed in behalf of the corporation by defendant on January 26, 1976, a time prior to the alleged revocation. Furthermore, the agreement recites that it constitutes an acknowledgment of indebtedness incurred for services rendered by plaintiff in July, August, and September 1975.

Additionally, Section 78.585, N.R.S. provides:

1. All corporations . . . whose charter has been forfeited, shall nevertheless be continued as bodies corporate for the purpose . . . of enabling them . . . to collect and discharge obligations, . . . but not for the purpose of continuing the business for which the corporation shall have been established.

Under this statute, had Bonneville Raceways charter been revoked prior to January 26, 1976, it would yet exist as a body corporate, for the purpose of entering into an agreement providing for the discharge of its indebtedness. Defendant may only be found personally liable under Sec. 16–10–139, if the charter of Bonneville Raceways had been revoked prior to July 1975, the time during which defendant as President continued the business of the corporation.

WILKINS, J., concurs in Justice MAUGHAN's dissent.

4. Id. pp. 750–751.