**THOMPSON & GREEN MACHINERY CO., INC., Plaintiff-Appellant,**

v.

**MUSIC CITY LUMBER COMPANY, INC.; Music City Sawmill Co., Inc., and Joseph E. Walker, Defendants-Appellees.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Oct. 17, 1984.

Application for Permission to Appeal
Denied by Supreme Court
Dec. 31, 1984.

Mark H. Westlake, Tune, Entrekin & White, Nashville, for plaintiff-appellant.

James R. Kniffen, Barnett & Alagia, Nashville, for defendants-appellees.

## OPINION

LEWIS, Judge.

We granted this Tenn.R.App.P. 9 appeal to consider whether the doctrines of de facto corporation and corporation by estoppel are alive and well in Tennessee or whether their demise was caused by the passage of the Tennessee General Corporations Act, specifically Tenn.Code Ann. §§ 48-1-204 and 48-1-1405.

The pertinent facts are as follows: Joseph E. Walker is President of Music City Sawmill Co., Inc. and Music City Lumber Company, Inc., both Tennessee corporations. On January 27, 1982, Mr. Walker, supposedly on behalf of Sawmill, purchased a wheel loader from plaintiff, Thompson & Green Machinery Co., Inc. However, on January 27, 1982, Sawmill was not a corporation, a fact unknown to either plaintiff or defendant Walker on January 27th. It was not until late July or early August, 1983, that it was discovered that the date of the incorporation of Sawmill was actually January 28, 1982, one day after the sale of the wheel loader.

Pursuant to the sale, Walker signed a promissory note in the amount of $37,-886.30 on behalf of Sawmill to plaintiff. A purchase money security interest was also taken in the equipment. The promissory note was signed in the following manner:

January 27, 1982

MUSIC CITY SAWMILL, INC.
(Corporate, Partnership or Trade   (Seal)
Name or Individual Signature)

BY: /s/ Joe Walker
    (Signature: Title of officer,
    "Partner" or "Proprietor")

Individually

Sawmill was unable to make the payments and returned the wheel loader on August 27, 1982. On October 14, 1982, plaintiff sold the wheel loader for $15,-303.83 and applied the proceeds to the note, leaving a balance of $17,925.81. So far as the record discloses, between January of 1982 and August, 1982, plaintiff and Sawmill dealt with each other as corporations.

Plaintiff brought suit against both Sawmill and Lumber on May 5, 1983, in the Chancery Court to recover the balance due on the note and parts sold to Sawmill. On August 5, 1983, plaintiff amended its complaint to include Mr. Walker as a defendant after plaintiff learned that Sawmill was not a corporation on January 27, 1982. This suit against Mr. Walker individually was his first notice that Sawmill was not incorporated on that date.

Mr. Walker does not seriously assert that the doctrine of de facto corporation is still viable in Tennessee. He does forcefully insist that plaintiff is estopped to deny Sawmill's corporate existence because plaintiff (1) "dealt with Sawmill as a corporation" and (2) "did not intend to bind [Mr. Walker] personally on the promissory note."

It is the insistence of plaintiff that neither the doctrine of de facto corporation nor corporation by estoppel are viable in Tennessee since the passage of the Tennessee General Corporations Act. Plaintiff contends that defendant Walker is personally liable because of the interaction of Tenn.Code Ann. § 48–1–1405 which provides that "[a]ll persons who assume to act as a corporation without authority so to do shall be jointly and severally liable for all debts and liabilities incurred or arising as a result thereof," and Tenn.Code Ann. § 48–1–204 which provides that "[a] corporation shall not ... incur any indebtedness ... until (a) The charter has been filed by the secretary of state, and (b) ... there has been received the amount stated in the charter as being the minimum amount of consideration to be received for its shares before commencing business."

Plaintiff insists that since the charter was not filed by the Secretary of State when the promissory note was executed, the corporation neither had the authority to incur indebtedness nor the power to authorize any actions on its behalf and, therefore, pursuant to Tenn.Code Ann. § 48–1–1405, Mr. Walker is liable "for all debts and liabilities incurred" since he assumed to act as a corporation without authority.

■ It is conceded that Sawmill did not have a corporate existence on January 27th. It therefore follows that Mr. Walker could not and did not have authority to act for Sawmill on January 27th when he executed the promissory note to plaintiff.

> It is a general rule that one who deals with an apparent corporation as such and in such manner as to recognize its corporate existence de jure or de facto is thereby estopped to deny the fact thus admitted.... The estoppel extends as well to the privies as to the parties to such transactions. The general rule is applied in actions brought by either of the contracting parties against the other, and in actions by the persons dealing with the corporation, wherein the existence of the corporation is assailed for the purpose of establishing individual partnership liability on the part of its members.

18 Am.Jur.2d Corporations § 76.

Tennessee has long recognized the foregoing rule. Our Supreme Court, in *Ingle System Co. v. Norris & Hall*, 132 Tenn. 472, 178 S.W. 1113 (1915), stated:

> When a private person enters into a contract with a body purporting to be a corporation, in which that body is described by the corporate name which it has assumed, such private person thereby admits the existence of the corporation for the purpose of the suit brought to enforce the obligations, and will not be permitted to deny the corporate existence of the plaintiff.

*Id.* at 474, 178 S.W. at 1114.

However, in 1968 the Tennessee General Assembly enacted the "Tennessee General

Corporations Act," Chapter 523, Pub. Acts of 1968.

Our research reveals no Tennessee decision which has addressed either de facto corporation or corporation by estoppel since the passage of the act in 1968.

Courts in other jurisdictions which have considered the question of de facto corporations under statutes similar to Tenn.Code Ann. §§ 48-1-204 and 48-1-1405 have held that under the act, de facto corporations no longer exist.

In *Timberline Equipment Company, Inc. v. Davenport*, 267 Ore. 64, 514 P.2d 1109 (1973), the Oregon Supreme Court, in interpreting ORS 57.321 and ORS 57.792, Oregon statutes almost identical to Tenn. Code Ann. §§ 48-1-204 and 48-1-1405, stated:

In 1953 the legislature adopted the Oregon Business Corporation Act. Oregon Laws 1953, ch. 549. The Model Business Corporation Act was used as a working model for the Oregon Act. 1952 Oregon State Bar Committee Reports, p. 5.

ORS 57.321 of the Oregon Business Corporation Act provides:

"Upon the issuance of the certificate of incorporation, the corporate existence shall begin, and such certificate of incorporation shall be conclusive evidence that all conditions precedent required to be performed by the incorporators have been complied with and that the corporation has been incorporated under the Oregon Business Corporation Act, except as against this state in a proceeding to cancel or revoke the certificate of incorporation or for involuntary dissolution of the corporation."

This section is virtually identical to § 56 of the Model Act. The Comment to the Model, prepared as a research project by the American Bar Foundation and edited by the American Bar Association Committee on Corporate Laws, states:

"Under the Model Act, de jure incorporation is complete upon the issuance of the certificate of incorporation, except as against the state in certain proceedings challenging the corporate existence. In this respect, the Model Act provisions are the same as those in many states, although in a number of them some further action is required before the corporation has legal existence, such as local filing or recording or publication.

"Under the unequivocal provisions of the Model Act, any steps short of securing a certificate of incorporation would not constitute apparent compliance. Therefore a de facto corporation cannot exist under the Model Act.

"Like provisions are made throughout the Model Act in respect of the conclusiveness of the issuance by the secretary of state of the appropriate certificate in connection with filings made in his office. * * *

"In some states, however, issuance of the certificate of incorporation and compliance with any additional requirements for filing, recording or publication is not conclusive evidence of incorporation. In those states, such action is stated to be only prima facie evidence of incorporation, and in others the effect is merely one of estoppel preventing any question of due incorporation being raised in legal actions by or against the corporation." Model Business Corporation Act Annotated § 56, p. 205 (2d ed. 1971). ORS 57.793 provides:

"All persons who assume to act as a corporation without the authority of a certificate of incorporation issued by the Corporation Commissioner, shall be jointly and severally liable for all debts and liabilities incurred or arising as a result thereof."

This is merely an elaboration of § 146 of the Model Act. The Comment states:

"This section is designed to prohibit the application of any theory of de facto incorporation. The only authority to act as a corporation under the Model Act arises from completion of the procedures prescribed in sections 53 to 55 inclusive. The consequences

of those procedures are specified in section 56 as being the creation of a corporation. No other means being authorized, the effect of section 146 is to negate the possibility of a de facto corporation.

"Abolition of the concept of de facto incorporation, which at best was fuzzy, is a sound result. No reason exists for its continuance under general corporate laws, where the process of acquiring de jure incorporation is both simple and clear. The vestigial appendage should be removed." 2 Model Business Corporation Act Annotated § 146, pp. 908–909 (2d ed. 1971).

In *Robertson v. Levy,* 197 A.2d 443 (D.C.Ct. of App.1964), the court held the president of a defectively organized corporation personally liable to a creditor of the "corporation." The applicable legislation was similar to Oregon's. The court held the legislation ended the common-law doctrine of de facto corporation.

The Alaska court upheld the cancellation of a special land-use permit upon the ground that the applicant had not yet been issued its certificate of incorporation at the time the permit was issued. *Swindel v. Kelly,* 499 P.2d 291 (Alaska 1972). Alaska has a statute similar to Oregon's. The court commented: "The concept of de facto corporations has been increasingly disfavored, and Alaska is among the states whose corporation statutes are designed to eliminate the concept." 499 P.2d at 299, n. 28.

*Vincent Drug Co. v. Utah State Tax Com'n,* 17 Utah 2d 202, 407 P.2d 683 (1965), cited by defendant, involved a statute similar to that of Oregon; however, the court held the de facto corporation doctrine continued to exist. No reasoning is stated and we find the case unpersuasive.

We hold the principle of de facto corporation no longer exists in Oregon.

*Timberline Equipment Co.,* 267 Ore. at 66–69, 514 P.2d at 1110–1111.

■ We are of the opinion that the Oregon Supreme Court gave the acts the only interpretation to which they are reasonably susceptible. We hold that the Tennessee General Assembly, by passage of the Tennessee General Corporations Act of 1968, abolished the concept of de facto incorporation in Tennessee.

We have found only one jurisdiction which has considered corporation by estoppel under statutes similar to ours. *Robertson v. Levy,* 197 A.2d 443 (D.C.Ct. of App. 1964). In that case Levy and Robertson entered into an agreement whereby Levy was to form a corporation, Penn Ave. Record Shack, Inc., which was to purchase Robertson's business. Levy submitted articles of incorporation to the authority designated by statute on December 27, 1961, but no certificate of incorporation was issued at that time. Pursuant to the contract, an assignment of lease was entered into on December 31, 1961 between Robertson and Levy with Levy acting as president of Penn Ave. Record Shack, Inc. On January 2, 1962, the articles of incorporation were rejected by the designated authority. On that same day, however, Levy began to operate the business under the name Penn Ave. Record Shack, Inc. Robertson executed a bill of sale to Penn Ave. Record Shack, Inc. on January 8, 1962, disposing of the assets of his business to Penn Ave. Record Shack, Inc., and receiving in return a note providing for installment payments. The note was signed: "Penn Ave. Record Shack, Inc., by Eugene M. Levy, President." On January 17, 1962, the certificate of incorporation for Penn Ave. Record Shack, Inc. was issued. In June, 1962, Penn Ave. Record Shack, Inc. ceased to do any business, and, subsequently, Robertson sued Levy for the balance due on the note.

The trial court held that the District of Columbia Code § 29–950, which is identical to Tenn.Code Ann. § 48–1–1405, did not apply and "that Robertson was estopped to deny the existence of the corporation."

On appeal, the Court of Appeals for the District of Columbia held that, pursuant to § 29–921c, which is substantially the same as Tenn.Code Ann. § 48–1–203, courts must no longer inquire into the equities of

a case to determine whether there has been "colorable compliance" with the statute, that before a certificate of incorporation issues, there "is no corporation de jure, de facto, or by estoppel." The Court went on to state:

> Under Section 29–950, if an individual or group of individuals assumes to act as a corporation before the certificate of incorporation has been issued, joint and several liability attaches. We hold, therefore, that the impact of these sections, when considered together, is to eliminate the concepts of estoppel and de facto corporatness under the Business Corporation Act of the District of Columbia. It is immaterial whether the third person believed he was dealing with a corporation or whether he intended to deal with the corporation. The certificate of incorporation provides the cutoff point; before it is issued, the individuals, and not the corporation, are liable.

*Robertson,* 197 A.2d at 447.

Corporate existence does not begin until such time as "the charter is filed by the secretary of state." Tenn.Code Ann. § 48–1–203.

> A corporation shall not transact any business, conduct any affairs, or incur any indebtedness except as shall be incidental to its organization, or, in the case of a corporation for profit, incidental to obtaining subscriptions to or payment for its shares until:
>
> (a) The charter has been filed by the secretary of state, and
>
> (b) If a corporation for profit, there has been received the amount stated in the charter as being the minimum amount of consideration to be received for its shares before commencing business.

Tenn.Code Ann. § 48–1–204.

Tenn.Code Ann. § 48–1–1405 mandates that "[a]ll persons who assume to act as a corporation without authority so to do shall be jointly and severally liable for all debts and liabilities incurred or arising as a result thereof."

The General Assembly, in enacting Tenn.Code Ann. § 48–1–1405 saw fit to place statutory liability upon those who assume to act as a corporation without authority. Section 48–1–1405 does not contain an exception that one who assumes to act as a corporation without authority shall be jointly and severally liable for debts and liabilities *except* when the plaintiff thereafter dealt with the corporation as a corporation or when the plaintiff did not intend to bind one who assumed to act personally. No exceptions are contained in § 48–1–1405. For this Court to hold that under the circumstances here Mr. Walker is not liable, it would be necessary that this Court rewrite the Tennessee General Corporations Act and hold that the Act does not mean what it says. We are not at liberty to do so. We find nothing ambiguous in Tenn.Code Ann. § 48–1–1405. It is clear that "[a]ll persons who assume to act as a corporation without authority so to do shall be jointly and severally liable for all debts and liabilities incurred or arising as a result thereof." We find no good faith exception in the act. To allow an estoppel would be to nullify Tenn.Code Ann. § 48–1–1405.

We are of the opinion that the doctrine of corporation by estoppel met its demise by the enactment of the Tennessee General Corporations Act of 1968.

It results that the judgment of the Chancellor is reversed and the cause remanded to the Chancery Court for the entry of judgment for plaintiff in the amount of $17,925.81 together with accrued interest and attorney's fees as provided by the note and for any other necessary proceedings. Costs are taxed to defendant Walker.

TODD, P.J., and KOCH, J., concur.