AMERICAN VENDING SERVICES, INC., Plaintiff, Appellee and Cross–Appellant,

v.

Wayne L. MORSE and Dianne L. Morse, individually and as Trustees of the Wayne L. Morse and Dianne L. Morse Irrevocable Family Trusts, Defendants, Appellants and Cross–Appellees,

v.

Douglas M. DURBANO and Kevin S. Garn, Involuntary Plaintiffs, Counterclaim Defendants and Appellees.

No. 920651–CA.

Court of Appeals of Utah.

Aug. 30, 1994.

James L. Christensen (argued) and Mark J. Morrise, Corbridge, Baird & Christensen, Salt Lake City, for appellants/cross-appellees.

Douglas M. Durbano, Walter T. Merrill (argued), Durbano & Associates, Ogden, for appellee/cross-appellant.

Robert K. Hilder (argued), Christensen, Jensen, and Powell, Salt Lake City, for counterclaim defendants.

Before BENCH, GREENWOOD and GARFF [1], JJ.

## AMENDED OPINION [2]

GREENWOOD, Judge:

Appellants, Wayne L. and Dianne L. Morse, individually and as Trustees of the Wayne L. Morse Irrevocable Family Trusts (Morses), appeal the trial court's ruling in their favor, asserting error in the court's legal conclusions regarding de facto corporations and corporations by estoppel as well as the court's decision regarding attorney fees. Appellee and Cross-appellant, American Vending Services, Inc. (AVSI) appeals the trial court's ruling against it, asserting that the trial court erred in finding that there was insufficient evidence to support AVSI's claims of fraudulent and negligent misrepresentation, breach of contract, and mutual mistake. We reverse in part and affirm in part.[3]

## BACKGROUND

The plethora of issues in this case arise from the relatively straightforward transaction of a car wash sale. Wayne L. and Dianne L. Morse built the car wash in 1984 and operated it for approximately eleven months. Thereafter, they entered into a contract with Douglas M. Durbano and Kevin S. Garn, both licensed attorneys acting as officers of AVSI, to purchase the car wash.[4]

Mr. Durbano and Mr. Garn claim that they represented to the Morses that the corporate entity, AVSI, would purchase and operate the car wash. At the time the parties executed the contract on July 10, 1985, Mr. Durbano had not filed the Articles of Incorporation for AVSI, although he had received permission from the Utah Division of Corporations to use the name American Vending Services, Inc. Mr. Durbano claims that he had twice tried to file Articles of Incorporation for this corporate entity before the contract was executed. In both cases, however, the Articles of Incorporation were returned because of a name conflict.[5] The Articles of Incorporation for AVSI were finally executed on August 1, 1985 and subsequently filed on August 19, 1985. Mr. Durbano's explanation for not filing the Articles of Incorporation before the parties executed the contract on July 10, 1985 was that he was "moving offices and was too busy and distracted to file the articles." The Morses asserted personal liability of Mr. Durbano and Mr. Garn based on the fact that the corporation did not legally exist when the parties executed the contract. The trial court dismissed the Morses' claims against Mr. Durbano and Mr. Garn, finding that Mr. Durbano's efforts to twice file Articles of Incorporation "constitute[d] a bona fide attempt to organize the corporation."

AVSI operated the car wash for approximately three years.[6] It experienced financial

1. Senior Judge Regnal W. Garff, acting pursuant to appointment under Utah Code Ann. § 78–3–24(10) (1992).

2. This opinion replaces the opinion of the same name issued June 28, 1994. The sole change is the addition of part three under Attorney Fees, titled "Attorney Fees on Appeal."

3. The concurring opinion of Judge Garff, concurred in by Judge Bench, represents the majority position regarding the scope of the corporation by estoppel doctrine in Utah. It does not, however, affect the result in this case. Furthermore, the lead opinion represents the majority opinion on the remaining issues.

4. The carwash sold for $65,000. The Morses transferred the $20,000 downpayment and the $45,000 promissory note from the sale of the carwash to the two family trusts shortly after the sale. About seven months after the transfer to

the family trusts, the Morses filed for Chapter 7 bankruptcy.

5. The first two names that Mr. Durbano tried to use were American Food Services, Inc. and American Food and Vending Services, Inc. Mr. Durbano and Mr. Garn also operated a partnership during this time under the name American Food Services. This fact clouds the issue because it is not clear whether the corporate entity that Mr. Durbano initially tried to incorporate was intended to operate the carwash or to own or be related to the ongoing partnership business.

6. At trial, Mr. Garn's accountant, who prepared the books and tax returns for all of Mr. Garn's businesses, including AVSI, testified that the business income and expense from AVSI was reported by Mr. Garn and Mr. Durbano as if they were operating a partnership. The corporate tax returns for AVSI were filed, but with the notation

difficulty, however, almost from the beginning and failed to make any payments to the Morses on the balance owing under the sales contract. Mr. Durbano and Mr. Garn claim that Mr. Morse provided them with projected income figures that were padded and false. Mr. Morse claims that the numbers were based on usage meters from the car wash which had been verified by another party. Mr. Morse also explains that the figures supplied to Mr. Durbano and Mr. Garn covered the best operating months of the year and thus were not tempered by the three or four slow months of operation. Finally, Mr. Morse claims that the car wash's financial troubles stemmed more from the inexperience of Mr. Durbano and Mr. Garn in operating a car wash than from incorrect income projections. Unable to profitably operate the car wash, AVSI eventually allowed the bank to foreclose on it.

AVSI's sole allegation that Mr. Morse supplied it with incorrect and false income projections forms the basis of its argument that it should have been able to rescind the contract under either a) fraudulent misrepresentation, b) negligent misrepresentation, c) material breach of contract, or d) mutual mistake. The trial court found, however, that the evidence on these claims was "insufficient to permit AVSI the right to rescind the contract."

At the conclusion of trial, the court entered its Findings of Fact. Those relevant to the issues on appeal are summarized as follows: (1) The Morses knew throughout the negotiations that Mr. Durbano and Mr. Garn intended to form a corporation to purchase the car wash; (2) Mr. Durbano and Mr. Garn's efforts to file Articles of Incorporation and obtain preapproval for the name American Vending Services, Inc. constituted a bona fide attempt to organize the corporation; (3) the Morses admitted AVSI's corporate existence in their initial answer to AVSI's complaint; (4) the Morses intended to contract with AVSI rather than with Mr. Durbano and Mr. Garn individually; and (5) AVSI's evidence concerning fraudulent and negligent

misrepresentation, breach of contract, and mutual mistake was insufficient to allow AVSI the right to rescind the contract.

Based on these Findings of Fact, the trial court entered the following relevant Conclusions of Law: (1) AVSI was a de facto corporation when it purchased the car wash; (2) AVSI was a corporation by estoppel when it purchased the car wash; (3) the Morses are estopped from denying the corporate existence of AVSI; and (4) AVSI failed to establish the elements of its claims for fraud, misrepresentation, breach of contract, and mutual mistake.

The trial court awarded damages to the Morses against AVSI in the amount of $76,832.30, plus costs, interest, and reasonable attorney fees. The Morses now appeal the trial court's ruling because, although favorable to them in most respects, it was apparently a hollow victory; AVSI has no assets or income from which it can satisfy the judgment. Thus, the Morses appeal the trial court's ruling that Mr. Durbano and Mr. Garn are not personally liable on the contract. In response, Mr. Garn and Mr. Durbano filed a cross-appeal, arguing principally that the trial court erred in concluding that the evidence regarding AVSI's claims of fraudulent and negligent misrepresentation, breach of contract, and mutual mistake was insufficient to permit AVSI to rescind the contract.

## ISSUES ON APPEAL

We address the following issues on appeal:[7] (1) Whether the trial court erroneously concluded that AVSI was a de facto corporation; (2) Whether the trial court erred by concluding as a matter of law that AVSI was a corporation by estoppel, thereby precluding the Morses from denying its corporate existence; (3) Whether the trial court (a) violated Rule 4–501 of the Utah Code of Judicial Administration by ruling on the Morses' request for attorney fees before they had an opportunity to submit a reply memorandum,

---

written across the front of the returns that the corporation was inactive.

7. AVSI raises numerous other issues on appeal. As they are not meritorious, we decline to address them. *See State v. Carter,* 776 P.2d 886 (Utah 1989).

(b) violated the standard announced in *Dixie State Bank v. Bracken*, 764 P.2d 985, 988 (Utah 1988), by reducing the Morses' requested attorney fees by ninety percent without supporting its decision with evidence from the record, and (c) whether the Morses are entitled to attorney fees on appeal; and (4) Whether the trial court erred by finding that AVSI's claims for fraudulent and negligent misrepresentation, breach of contract, and mutual mistake were not supported by the evidence.

## STANDARD OF REVIEW

The three issues raised by the Morses challenge the trial court's legal conclusions. We review those conclusions for correctness, according them no particular deference. *Grayson Roper Ltd. v. Finlinson*, 782 P.2d 467, 470 (Utah 1989). The only issue raised by AVSI that we address involves a challenge to the legal sufficiency of the evidence. "When an appellant is essentially challenging the legal sufficiency of the evidence, a clearly erroneous standard of appellate review applies.... 'A finding attacked as lacking adequate evidentiary support is deemed "clearly erroneous" only if we conclude that the finding is against the clear weight of the evidence.'" *Reinbold v. Utah Fun Shares*, 850 P.2d 487, 489 (Utah App.1993) (quoting *Reid v. Mutual of Omaha Ins. Co.*, 776 P.2d 896, 899–900 (Utah 1989)).

## ANALYSIS

### De Facto Corporations in Utah

At common law, corporations could be either de jure, de facto, or by estoppel.

A de jure corporation is ordinarily thought of as one which has been created as the result of compliance with all of the constitutional or statutory requirements of a particular governmental entity. A de facto corporation, on the other hand, can be brought into being when it can be shown that a bona fide and colorable attempt has been made to create a corporation, even though the efforts at incorporation can be shown to be irregular, informal or even defective.

Corporations by estoppel come about when the parties thereto are estopped from denying a corporate existence. In other words, the parties may, by their agreements or conduct, estop themselves from denying the existence of the corporation.

*Harris v. Stephens Wholesale Bldg. Supply Co.*, 54 Ala.App. 405, 309 So.2d 115, 117–18 (Ala.Civ.App.1975) (citations omitted).

In Utah, corporate formation and all its attendant formalities are governed by the Business Corporation Act.[8] Two sections of that act are relevant to the issues raised in this appeal. Section 16–10–51 indicates that a corporation's existence begins when the State issues the certificate of incorporation:

Upon the issuance of the certificate of incorporation, the corporate existence shall begin, and the certificate of incorporation shall be conclusive evidence that all conditions precedent required of the incorporators have been complied with and that the corporation has been incorporated under this act, except as against this state in a proceeding to cancel or revoke the certificate of incorporation or for involuntary dissolution of the corporation.

Utah Code Ann. § 16–10–51 (1991). Additionally, section 16–10–139 provides: "All persons who assume to act as a corporation without authority so to do shall be jointly and severally liable for all debts and liabilities incurred or arising as a result thereof." *Id.* § 16–10–139.

At common law, the doctrine of de facto corporations was created to protect individuals from personal liability when they were legitimately conducting corporate business before the corporate formalities were com-

---

8. The Business Corporation Act, enacted by Utah in 1961, is found at Utah Code Ann. §§ 16–10–1 to –141 (1991). In 1992, the Utah Legislature enacted the Revised Business Corporation Act. Found at Utah Code Ann. §§ 16–10a–101 to –1704 (Supp.1993), this revised act supersedes the original act as of its effective date, July 1, 1992.

The Business Corporation Act is controlling law in this case, however, as the facts arose prior to the revised act's passage. The Business Corporation Act was modeled after the Model Business Corporation Act, and Utah in fact adopted the Model Act without major changes.

plete. Under this doctrine, the corporation, rather than the individual incorporators, was held liable for preincorporation obligations if several factors were present: (1) A valid law existed under which such a corporation could be lawfully organized; (2) an attempt had been made to organize thereunder; and (3) the defective corporation was an actual user of the corporate franchise. *Robertson v. Levy*, 197 A.2d 443, 445 (D.C.App.1964) (citing *Tulare Irrigation Dist. v. Shepard*, 185 U.S. 1, 13, 22 S.Ct. 531, 536, 46 L.Ed. 773 (1902)). Often added to this list of requirements was a fourth one—"[g]ood faith in claiming to be and in doing business as a corporation." *Id.* Over time, the doctrine of de facto corporations has been "roundly criticized." *Id.*

This criticism provided partial impetus for the emergence of the Model Business Corporation Act (MBCA). The MBCA strove to codify a uniform set of laws regarding corporations and to provide some clarity and bright-line tests to previously clouded areas. Many states, including Utah, adopted the MBCA in whole or in part. Each of the MBCA's sections has comments indicating the purpose and intent of that section. MBCA sections 56 and 146 (corresponding to Utah's sections 51 and 139 respectively) contain an express intent to abolish the concept of de facto corporations.[9] The comment to section 56 states:

> Under the Model Act, de jure incorporation is complete upon the issuance of the certificate of incorporation.... Under the unequivocal provisions of the Model Act, any steps short of securing a certificate of incorporation would not constitute apparent compliance. Therefore a de facto corporation cannot exist under the Model Act.

Model Business Corporation Act Ann., § 56 cmt., at 205 (1971). Similarly, the comment to section 146 states:

> [S]ection [146] is designed to prohibit the application of any theory of de facto incorporation. The only authority to act as

a corporation under the Model Act arises from completion of the procedures prescribed in section 53 to 55 inclusive. The consequences of those procedures are specified in section 56 as being the creation of a corporation. No other means being authorized, the effect of section 146 is to negate the possibility of a de facto corporation.

> Abolition of the concept of de facto incorporation, which at best was fuzzy, is a sound result. No reason exists for its continuance under general corporate laws, where the process of acquiring de jure incorporation is both simple and clear. The vestigial appendage should be removed.

*Id.* § 146 cmt., at 908–09.

AVSI asserts on appeal that Utah continues to recognize the doctrine of de facto corporations notwithstanding Utah's 1961 adoption of the Business Corporation Act. To support its position, AVSI relies primarily on the case of *Vincent Drug Co. v. State Tax Commission*, 17 Utah 2d 202, 407 P.2d 683 (1965). *Vincent Drug*, decided four years after Utah enacted the Business Corporation Act, held that the plaintiff corporation in that case was a de facto corporation. In *Vincent Drug*, the incorporators filed Articles of Incorporation in January 1962 and paid the requisite filing and license fees of forty-five dollars. The corporation began conducting business shortly thereafter and elected a corporate fiscal year ending March 31. The Secretary of State subsequently returned the Articles of Incorporation to the corporation's counsel because the street addresses of the incorporators and directors had not been included. The State retained, however, the filing and license fees. The corporation supplied the omitted information and returned the Articles of Incorporation to the State, which then issued the certificate of incorporation on May 21, 1962. Two years later, the State Tax Commission assessed a tax defi-

---

9. The MBCA indicates that the following states adopted § 56 (corresponding to Utah's § 51) identically or identically in substance: Alaska, Mississippi, Montana, New Mexico, North Dakota, Oregon, South Dakota, Utah, and Wyoming. Likewise, the following states adopted § 146 (corresponding to Utah's § 139) either identically or identically in substance: Alaska, Colorado, Illinois, Iowa, Mississippi, New Mexico, North Dakota, Oregon, South Dakota, Tennessee, Utah, Washington, and Wyoming.

ciency against the corporation because the Commission deemed invalid the corporation's March 31 fiscal year end. Without any reference to the Utah Business Corporation Act, the Utah Supreme Court held for the plaintiff corporation and ruled that it was a de facto corporation as of the date it originally submitted the Articles of Incorporation, January 2, 1962.

Despite the holding in *Vincent Drug*,[10] we are convinced that more recent case law in Utah, supported by the comments to the MBCA, implicitly overrules *Vincent Drug* and supports our conclusion today that Utah's adoption of the Business Corporation Act extinguished the doctrine of de facto corporations. The 1977 Utah Supreme Court case of *Gillham Advertising Agency, Inc. v. Ipson*, 567 P.2d 163 (Utah 1977) impacts the present case in two important ways. First, *Gillham* is factually similar to the present case in that an individual signed an agreement as president of a corporation that did not exist in Utah at the time of signing. The agreement imposed liability on the nonexistent corporation. The supreme court held that the individual was personally liable on the debt because there was no novation of the agreement by which the corporation agreed to pay the debt and the creditor did not release the individual who signed the agreement from liability. *Id.* at 164; *see also Sterling Press v. Pettit*, 580 P.2d 599, 600 (Utah 1978) (following, without citing, rationale of *Gillham* and holding individuals personally liable). Furthermore, the court also justified the imposition of personal liability on the individual because no corporation existed at the time the parties executed the agreement. *Gillham*, 567 P.2d at 164–65. Second, *Gillham* is important because it cited with approval the comments from section 146 of the MBCA demonstrating the MBCA's intent to extinguish de facto corporations. *Id.* at 166 (Maughan, J., dissenting)[11] (quoting Model Business Corporation Act Ann.

§ 146 cmt., at 908 (1971)); *see also Robertson v. Levy*, 197 A.2d 443, 446 (D.C.App. 1964) (noting that authorities on MBCA agree that it eliminated de facto corporations); *Timberline Equipment Co. v. Davenport*, 267 Or. 64, 514 P.2d 1109, 1110–11 (1973) (citing comment to section 146 in holding that de facto corporations no longer exist in Oregon).

Five years later, the Tenth Circuit quoted *Gillham* with approval. In *Loveridge v. Dreagoux*, 678 F.2d 870 (10th Cir.1982), two individuals signed corporate debentures in their capacities as president and secretary of the corporation issuing the debentures. Two investors purchased the debentures one and five days, respectively, before the corporation was incorporated under the laws of Nevada. When the corporation failed to pay the debentures when they became due, the investors brought suit to recover their investments. *Id.* at 872–73. The Tenth Circuit determined that Utah law applied to the case under conflicts of law principles. Applying Utah law, the court held that the president and secretary of the corporation were personally liable on the debentures because at the time they had signed and sold them, no corporation existed. Citing *Gillham*, the Tenth Circuit noted that section 139 of Utah's Business Corporation Act imposes joint and several liability on persons who "presume to act for the nonexistent corporation." *Id.* at 878.

We find persuasive the reasoning of *Gillham, Sterling Press, Loveridge*, and the comments to sections 56 and 146 of the MBCA and rely on them for our holding that the doctrine of de facto corporations no longer exists in Utah. We believe that the Legislature intended to extinguish the doctrine of de facto corporations when it adopted the Business Corporation Act because the relevant portions of the Act, sections 51 and 139, were taken verbatim from the MBCA. The Legis-

10. Courts in two other jurisdictions have mentioned *Vincent Drug* in opinions discussing de facto corporations. Both courts similarly commented that the *Vincent Drug* court stated no rationale for its holding and is "unpersuasive." *Timberline Equip. Co. v. Davenport*, 267 Or. 64, 514 P.2d 1109, 1111 (1973); *Thompson & Green*

*Mach. v. Music City Lumber*, 683 S.W.2d 340, 344 (Tenn.App.1984).

11. Justice Maughan dissented on the basis that a valid Nevada corporation existed at the time in question, thereby shielding the individual from personal liability.

lature's word-for-word adoption of these sections can be reasonably construed as an implicit acceptance of the comments attached thereto which express the underlying intent of the MBCA generally and these sections specifically to abolish de facto corporations. In addition, we believe that the Utah Supreme Court has effectively overruled *Vincent Drug* by its subsequent holdings in *Gillham* and *Sterling Press.*[12]

■ Accordingly, the trial court erred when it concluded as a matter of law that AVSI was a de facto corporation when the car wash was purchased. It is undisputed that the State of Utah had not issued a certificate of incorporation to AVSI before the car wash was sold and transferred. Hence, pursuant to section 16–10–51, AVSI's corporate existence had not yet begun. Furthermore, section 16–10–139 imposes joint and several liability on Mr. Durbano and Mr. Garn for all the debts and liabilities that they incurred or that arose as a result of their actions before the corporation legally existed. In the present case, that liability is for the judgment amount entered against AVSI by the trial court.

### Corporation by Estoppel in Utah

AVSI argues next that the Morses are estopped from arguing that it was not a corporation because the Morses knew all along that Mr. Durbano and Mr. Garn intended to have AVSI purchase and run the car wash. The question of whether the doctrine of corporation by estoppel remains viable in this State after adoption of the Business Corporation Act is an issue of first impression.[13]

The doctrine developed in the courts of equity to prevent unfairness. As one court has stated, "Corporation by estoppel is a difficult concept to grasp and courts and writers have 'gone all over the lot' in attempting to define and apply the doctrine." *Timberline Equipment Co. v. Davenport,* 267 Or. 64, 514 P.2d 1109, 1111 (1973). A treatise on corporations defines the doctrine as follows:

> The so-called estoppel that arises to deny corporate capacity does not depend on the presence of the technical elements of equitable estoppel, viz., misrepresentations and change of position in reliance thereon, but on the nature of the relations contemplated, that one who has recognized the organization as a corporation in business dealings should not be allowed to quibble or raise immaterial issues on matters which do not concern him in the slightest degree or affect his substantial rights.

*Id.* 514 P.2d at 1111–12 (quoting Ballantine, *Manual of Corporation Law and Practice* §§ 28–30 (1930)). Generally, courts apply this doctrine according to who is being charged with estoppel. Usually the courts are willing to apply corporation by estoppel when the case involves a defendant seeking to escape liability to a corporation by complaining that the corporation's existence is flawed. *Id.* at 1112. On the other hand, courts are typically more reluctant to apply the doctrine when individuals, usually incorporators, seek to escape liability by contend-

---

**12.** Even if *Vincent Drug* were still good law, however, it is factually distinguishable from the present case. The main distinction between *Vincent Drug* and the present case is that the State retained the filing fees in *Vincent Drug,* but in the instant case refused to accept anything. By retaining the filing fees, while at the same time returning the Articles of Incorporation for the correction of only minor and immaterial omissions, the State arguably recognized, to a limited extent, that the corporation had "colorably" complied with the statute. In the present case, however, Mr. Durbano's two attempts to incorporate, using names that were not available and also wholly different from the ultimate name, i.e., AVSI, arguably fell short of any colorable compliance with the statute.

Additionally, the issue in *Vincent Drug* involved the liability of the corporation, not its incorporators. Therefore, the supreme court was presumably less concerned with distinguishing between de facto and de jure corporations.

**13.** The Utah Supreme Court has not specifically addressed whether the doctrine of corporation by estoppel still exists after adoption of the Business Corporation Act. *See In re Solar Energy Sales & Serv., Inc.,* 4 B.R. 364 (Bankr.D.Utah 1980) (declining to address whether Utah Supreme Court would recognize corporation by estoppel because of alternative ground for decision).

ing that the debtor is a corporation rather than the individuals who purported to act as a corporation. *Id.*

A review of jurisdictions that have addressed this issue reveals a divergence of views. For example, Oklahoma, and apparently Georgia, have adopted the position that the doctrine of corporation by estoppel cannot be invoked to deny corporate existence unless the corporation has at least a de facto existence. *Don Swann Sales Corp. v. Echols,* 160 Ga.App. 539, 287 S.E.2d 577, 579–80 (1981); *James v. Unknown Trustees,* 203 Okla. 312, 220 P.2d 831, 835 (1950). The District of Columbia and Tennessee have taken the position that the MBCA eliminated estoppel corporations altogether. *Robertson v. Levy,* 197 A.2d 443, 446 (D.C.App.1964); [14] *Thompson & Green Mach. v. Music City Lumber Co.,* 683 S.W.2d 340, 344–45 (Tenn. App.1984). Another view, taken by Alaska, allows corporations by estoppel even when the corporation has not achieved de facto existence. *Willis v. City of Valdez,* 546 P.2d 570, 574 (Alaska 1976). Still another jurisdiction, Arkansas, has stated that corporation by estoppel rests "wholly upon equitable principles ... and should be applied only where there are equitable grounds for doing so." *Childs v. Philpot,* 253 Ark. 589, 487 S.W.2d 637, 641 (1972). Finally, Florida has adopted the position that the doctrine of corporation by estoppel cannot be invoked where the individual seeking to avoid liability had constructive or actual knowledge that the corporation did not exist. *Harry Rich Corp. v. Feinberg,* 518 So.2d 377, 381 (Fla. App.1987).

I am unpersuaded by the argument that the adoption of the Utah Business Corporation Act extinguished the doctrine of corporation by estoppel in addition to de facto corporations.[15] While some jurisdictions have adopted this position, I find no basis in the comments to the MBCA for such a stance. Likewise, I find unconvincing those cases holding that a de facto corporation must exist before the theory of corporation by estoppel has viability. The theories of de facto and estoppel corporations are separate and distinct; the former is grounded in law while the latter is based on equity.

The fact that directors, officers, and shareholders in Utah generally enjoy limited liability is a benefit conferred by the Legislature and is the result of a public policy decision aimed at encouraging Utah's citizens to engage in private enterprise with all its attendant risks. To make this limited liability available with relative ease, the Business Corporation Act, and its successor, the Revised Business Corporation Act, make the act of incorporation fairly painless—both in terms of the financial cost and effort required to incorporate. Given the ease of incorporating, I am hesitant to carve out exceptions to the general rule found in section 16–10–139 that individuals who assume to act as a corporation before that corporation exists are jointly and severally liable.

Notwithstanding my reluctance to make an exception, I am persuaded by the reasoning of the Florida Court of Appeals that the doctrine of corporation by estoppel should be viable in the narrow situation when those individuals acting on behalf of the corporation have no actual or constructive knowledge that the corporation does not exist. In *Harry Rich Corp.,* the appeals court focused on the language in Florida's statute that imposed joint and several liability on individuals

**14.** *Timberline Equipment Co. v. Davenport,* 267 Or. 64, 514 P.2d 1109, 1111 n. 1 (1973), noted that the same panel of judges in *Levy* that held that the MBCA revoked the doctrine of both de facto and estoppel corporations, later held, without mentioning *Levy,* that a party was estopped to deny the existence of a corporation in *Namerdy v. Generalcar,* 217 A.2d 109 (D.C.App.1966).

In addition, the holding in *Levy* that the MBCA eliminated both de facto and estoppel corporations is unsupported by the comments to the MBCA. The comments to §§ 56 and 146 specifically address de facto corporations, but except for several annotations to cases discussing estoppel corporations, are silent as to whether the MBCA eliminated corporations by estoppel.

**15.** Judge Garff's concurring opinion, in which Judge Bench concurs, represents the majority view on this issue and holds that corporation by estoppel was eliminated by *Utah's* adoption of the Business Corporation Act. I would preserve a limited exception for the corporation by estoppel theory. We all agree, however, that Mr. Durbano and Mr. Garn may not, in this case, assert corporation by estoppel to avoid personal liability.

who "assume to act" as a corporation.[16] 518 So.2d at 381. The court found significant that the statute does not impose liability on all those who "act," but only on those who "assume to act." Based on this distinction, the Florida court concluded that "the use of this language reflects an intent to limit the statute's application to those persons who knew or, because of their position, should have known" that the corporation did not exist. The court further noted that

> where corporation by estoppel (which allows recovery from the corporation) is retained alongside a statute imposing liability on an individual who assumes to act as a corporation, recovery from the individual should be permitted only where the individual acts with actual or constructive knowledge that no corporation exists. This slight windfall to the creditor can be justified on the ground that the individual has not been completely forthcoming to the creditor and should suffer the consequences.

*Id.*[17] I agree with this reasoning and would hold that the doctrine of corporation by estoppel, because it coexists with section 16–10–139, can be invoked only where both parties reasonably believe they are dealing with a corporation and neither party has actual or constructive knowledge that the corporation does not exist.

In the present case, the parties dispute whether both sides knew that a corporation was involved. Mr. Garn and Mr. Durbano claim that the Morses knew from the beginning that AVSI was to purchase the car wash. Conversely, the Morses claim that they only discovered the involvement of AVSI when they signed the papers at closing. Despite the parties' conflicting ac-

counts, it is undisputed that at the time the Morses signed the contract, Mr. Durbano and Mr. Garn had actual or constructive knowledge that AVSI did not legally exist under the laws of Utah. Accordingly, neither Mr. Durbano nor Mr. Garn can invoke the doctrine of corporation by estoppel to shield them from personal liability for the debts that they incurred while assuming to act on behalf of the nonexistent corporation.

### Attorney Fees

1. *Rule 4–501*

The Morses argue that the trial court violated Rule 4–501 of the Utah Code of Judicial Administration by considering AVSI's late-filed memorandum in opposition and by ruling on the Morses' motion to determine attorney fees before the Morses had an opportunity to submit their reply memorandum.

At the end of trial, the Morses filed a motion to determine attorney fees. AVSI failed to file a memorandum in opposition to the motion within the ten-day period allowed by Rule 4–501 of the Utah Code of Judicial Administration. The Morses then submitted to the trial court a Notice to Submit for Decision. The following day, AVSI filed a short response in opposition to the Morses' motion and later filed a memorandum of points and authorities in support of its motion in opposition. Four days after AVSI filed its memorandum in opposition, and before the five-day period provided by Rule 4–501 for a reply memorandum had expired, the trial court entered its decision. In its decision, the trial court reduced the Morses' requested attorney fees by ninety percent—from $112,435 to $11,243. After the trial court entered its decision, and within the

---

**16.** Florida's statute, § 607.397, is derived from the 1969 version of the Model Business Corporation Act and does not differ materially from Utah's § 139.

**17.** Judge Garff, in his concurring opinion, takes issue with my reliance on *Harry Rich* because the Florida statute contains separate statutory language regarding corporate estoppel. I have two brief comments on this point. First, my reliance on *Harry Rich* focuses on the identical language found both in Florida's and Utah's statutes, which imposes joint and several liability on

preincorporators, rather than on the additional estoppel language in Florida's statute. Second, Florida's specific statutory language on estoppel which differs from Utah's is inapposite to the present case. It prohibits individuals acting as a corporation from denying corporate, rather than personal, liability to third parties by raising lack of legal organization as a defense. In the present case, Mr. Durbano and Mr. Garn are seeking to avoid personal, rather than corporate, liability by seeking refuge under a corporate shield that is technically flawed.

time allotted by Rule 4–501, the Morses submitted a reply memorandum and revised affidavits to the trial court; they assert that these documents corrected any deficiencies found in the memorandum and affidavits that supported their initial motion for attorney fees. The trial court subsequently denied the Morses' motion to reconsider.

It is clear from the record that the trial court considered both parties' motions and memoranda for and against the award of attorney fees. The trial court stated in its Order that it had considered the "motion, supporting and opposing memoranda and affidavit of James L. Christensen," counsel for the Morses. It is equally clear that the trial court failed to consider the Morses' reply memorandum and its revised attorney fees affidavit. The trial court stated: "[A]nd not having considered defendants' reply memorandum and the additional affidavit of James L. Christensen." The trial court therefore erred by entering its decision before the time allowed under Rule 4–501 to file a reply memorandum had expired and by not reconsidering its decision by reviewing the Morses' reply memorandum and revised affidavits.

### 2. Reasonableness Supported by Evidence in the Record

■ In addition to ruling on attorney fees without considering the Morses' reply memorandum, the trial court reduced the Morses' requested attorney fees by ninety percent without providing support for its decision in the record. The trial court gave the following explanation for reducing the requested attorney fees: "Defendants' claimed fees of $112,435 are excessive. A reasonable fee is one-tenth of the amount claimed, i.e., $11,243."

While the "[c]alculation of reasonable attorney fees is in the sound discretion of the trial court and will not be overturned in the absence of a showing of a clear abuse of discretion[,] ... an award of attorney fees must be supported by evidence in the rec-

ord." *Dixie State Bank v. Bracken,* 764 P.2d 985, 988 (Utah 1988) (citations omitted). In *Dixie State Bank,* the Utah Supreme Court gave practical guidelines for courts to follow in calculating reasonable attorney fees. Although the trial court did not sign Findings of Fact and Conclusions of Law on this issue, there is some suggestion in the record that the trial court's decision was influenced by the fact that the requested attorney fees greatly exceeded the amount in controversy. While this is not necessarily an unwarranted factor for reducing requested attorney fees, it should be noted that one of the practical guidelines enunciated by the supreme court was to avoid putting too much reliance on this factor.[18] *Id.* at 990. In *Dixie State Bank,* the supreme court listed four questions that the trial court should answer in arriving at a reasonable amount for attorney fees:

1. What legal work was actually performed?

2. How much of the work performed was reasonably necessary to adequately prosecute the matter?

3. Is the attorney's billing rate consistent with the rates customarily charged in the locality for similar services?

4. Are there circumstances which require consideration of additional factors, including those listed in the Code of Professional Responsibility?

*Id.* (footnotes omitted).

In the present case, the trial court signed the judgment granting attorney fees but failed to sign the Findings of Fact and Conclusions of Law found in the record. Therefore, it technically failed to support its decision by evidence in the record. In addition, we believe that the trial court's cursory statement that the requested attorney fees were "excessive," failed to show that it had undergone an analysis similar to that contemplated by *Dixie State Bank.*

**18.** The supreme court noted that "[i]t is a simple fact in a lawyer's life that it takes about the same amount of time to collect a note in the amount of $1,000 as it takes to collect a note for $100,000." *Dixie State Bank v. Bracken,* 764 P.2d 985, 990 (Utah 1988). The court further noted that the

" 'amount of damages awarded in a case does not place a necessary limit on the amount of attorneys fees that can be awarded.' " *Id.* (quoting *Cabrera v. Cottrell,* 694 P.2d 622, 625 (Utah 1985)).

We therefore remand to the trial court the issue of attorney fees because (1) it erred in applying Rule 4–501 by considering AVSI's late-filed motion and also by rendering its decision before the Morses' time to respond had passed, and (2) the trial court failed to support its determination of reasonable attorney fees by evidence in the record.

### 3. *Attorney Fees on Appeal*

■ The Morses ask for their attorney fees incurred on appeal. Utah adheres to the rule that "a provision for payment of attorney's fees in a contract includes attorney's fees incurred by the prevailing party on appeal as well as at trial, if the action is brought to enforce the contract." *Management Servs. Corp. v. Development Assocs.,* 617 P.2d 406, 409 (Utah 1980); *accord Cobabe v. Crawford,* 780 P.2d 834, 837 (Utah App.1989).

The promissory note, trust deed, and purchase agreement signed by Durbano and Garn on behalf of American Vending all provide, in the event of default, for the payment of costs and attorney fees to the nonbreaching party. Accordingly, as the Morses brought the initial action to enforce the purchase agreement, promissory note, and trust deed, they are entitled to their attorney fees and costs incurred on appeal. Therefore, on remand the trial court should include these items in its award of attorney fees.

### AVSI's Claims For Breach of Contract

On cross-appeal, AVSI asserts that it produced "overwhelming evidence" at trial supporting the theories of fraudulent misrepresentation, negligent misrepresentation, material breach of contract, and mutual mistake. Despite this evidence, argues AVSI, the trial court refused to rescind the Agreement. In fact, the trial court noted in its Findings of Fact that the "evidence concerning fraud, misrepresentation, breach of contract and mutual mistake was insufficient to permit American Vending Services, Inc. the right to rescind the contract."

■ The trial court's finding of fact regarding the sufficiency of the evidence will not be overturned on appeal unless it is clearly erroneous. *Reinbold v. Utah Fun Shares,* 850 P.2d 487, 489 (Utah App.1993). The trial court is in the most advantaged position to weigh and balance the evidence during trial. We have reviewed the record in this case and believe that the trial court's finding that AVSI's evidence on the stated theories was insufficient is not clearly erroneous because it is not against the clear weight of the evidence. We therefore affirm the trial court's ruling on this issue.

### CONCLUSION

We reverse the trial court's conclusions that AVSI was a de facto corporation and a corporation by estoppel at the time the car wash sale was consummated and hold that Mr. Durbano and Mr. Garn are personally liable, pursuant to Utah Code Ann. § 16–10–139 (1991), for the judgment entered by the trial court against AVSI. The doctrines of de facto corporation and corporation by estoppel were both eliminated with enactment of the Business Corporation Act. We also reverse and remand to the trial court on the issue of attorney fees, so that the trial court can consider the Morses' reply memorandum and revised affidavit and can also enter its ruling in accordance with *Dixie State Bank v. Bracken,* 764 P.2d 985, 988 (Utah 1988). Furthermore, the Morses are entitled to their attorney fees incurred on appeal and the trial court should incorporate these amounts into its ultimate award of attorney fees. Finally, we affirm the trial court's finding that the evidence underlying AVSI's contractual claims was insufficient.

REGNAL W. GARFF, Judge (concurring):

■ I concur with the reasoning of Judge Greenwood in all but that part of the opinion dealing with corporation by estoppel, wherein I concur in the result only.

I do not believe corporation by estoppel exists in Utah because Utah Code Ann. § 16–10–51 (1989) clearly states that corporate existence does not begin until the certificate of incorporation is issued. Because this wording is unambiguous, there is no justifiable reason to conclude that the legislative intent was otherwise.

The comment section to the Model Business Corporation Act that pertains to sections 51 and 139 of the Utah Act states, as noted by the majority, that "[u]nder the unequivocal provisions of the Model Act, any steps short of securing a certificate of incorporation would not constitute apparent compliance. Therefore a de facto corporation cannot exist under the Model Act." Although the comment is silent as to corporations by estoppel, there is no reason to assume that estoppel would not be included in the incontrovertible language of the statute. In other words, there is no compliance without the certificate. There is no authority to act unless the rather simple, straightforward procedures are followed.

I agree with the courts of appeal of the District of Columbia and Tennessee, whose statutes are substantially similar to those of Utah and the Model Act. Those courts rejected the concept of corporation by estoppel.

No longer must the courts inquire into the equities of a case to determine whether there has been "colorable compliance" with the statute. The corporation comes into existence only when the certificate has been issued. Before the certificate issues, there is no corporation de jure, de facto or by estoppel.

. . . .

It is immaterial whether the third person believed he was dealing with a corporation or whether he intended to deal with a corporation. The certificate of incorporation provides the cut off point; before it is issued, the individuals, and not the corporation, are liable.

*Robertson v. Levy,* 197 A.2d 443, 446–47 (D.C.App.1964).

The General Assembly ... saw fit to place statutory liability upon those who assume to act as a corporation without authority.... No exceptions are contained in [the statute]. For this Court to hold that under the circumstances here Mr. Walker is not liable, it would be necessary that this Court rewrite the Tennessee General Corporations Act and hold that the Act does not mean what it says....

We are of the opinion that the doctrine of corporation by estoppel met its demise by the enactment of the [Act].

*Thompson & Green Mach. v. Music City Lumber Co.,* 683 S.W.2d 340, 345 (Tenn.App. 1984).

Judge Greenwood relies on *Harry Rich Corp. v. Feinberg,* 518 So.2d 377 (Fla.App. 1987) to create corporation by estoppel in Utah in those limited situations where the individual seeking to avoid liability had no constructive or actual knowledge that the corporation did not exist. However, there is one significant difference between Florida and Utah: Florida has codified the doctrine of corporation by estoppel wherein private litigants are estopped from asserting the nonexistence of the corporation if they have, by conduct or words, affirmed or relied on its existence.

"Estoppel.—No body of persons acting as a corporation shall be permitted to set up the lack of legal organization as a defense to an action against them as a corporation, nor shall any person sued on a contract made with the corporation or sued for an injury to its property or a wrong done to its interests be permitted to set up the lack of such legal organization in his defense."

In other words, the corporation may sue and be sued as if it existed if the parties to the contract behaved as if it existed.

*Id.* at 379 (quoting Fla.Stat. § 607.401). The Florida court went on to say,

[I]n states such as Florida, where corporation by estoppel (which allows recovery from the corporation) *is retained alongside a statute imposing liability on an individual who assumes to act as a corporation,* recovery from the individual should be permitted only where the individual acts with actual or constructive knowledge that no corporation exists.

*Id.* at 381 (emphasis added). Thus, Florida law recognizes corporate liability by estoppel, but conditions individual liability on knowledge.

Thus, I conclude that the Florida case is not applicable in Utah and should not be relied on to establish corporation by estoppel.

I would rely on the clear, unambiguous language of the Utah statute.

I agree with the majority that Durbano and Garn are personally liable. However, I do so on the basis that the Business Corporation Act eliminated the doctrines of de facto corporations and corporations by estoppel.

BENCH, Judge, concurring.

I concur in the concurring opinion of Judge GARFF.